## COLQUIT v. STATE.

### (*Jackson.*    June  19,  1901.)

1. EVIDENCE.   *Verdict of coroner's jury not admissible, when.*

   The verdict of a coroner's jury finding that defendant killed the deceased, and that the killing was a "cold-blooded murder," is not admissible against the defendant in a murder trial. *Aliter*, it seems, in civil cases, as to that part of the verdict which is not a mere expression of opinion. (*Post, pp. 382–385.*)

   Case cited: Galloway v. Shelby County, 7 Lea, 121.

2. SAME.   *Withdrawn, no cause for new trial.*

   If incompetent evidence that has gone before the jury is afterwards definitely withdrawn with proper instructions to the jury to disregard it, it constitutes no cause for new trial or reversal. (*Post, pp. 385, 386.*)

   Cases cited: Railroad v. Humphreys, 12 Lea, 200; Green v. State, 97 Tenn., 59–62.

3. SAME.   *Self-serving declarations.*

   Statements of the defendant made on the day before the killing explaining his relations with deceased and narrating his action are not part of the *res gestæ*, but self-serving and inadmissible on a trial for the murder. (*Post, pp. 386, 387.*)

   Cases cited: Evans v. Jones, 8 Yer., 463; Kirby v. State, 7 Yer., 259; Kirby v. State, 9 Yer., 383; Irvine v. State, 104 Tenn., 138.

4. SAME.   *Exclusion of acts not traced to deceased.*

   The court does not err in excluding on a murder trial proof of acts of an unknown person calculated to put the defendant in fear, when they are in no way traceable to the deceased. (*Post, pp. 387, 388.*)

5. SAME.   *Witness' opinion incompetent.*

   It is reversible error for the Court to permit a witness, over defendant's objection, to testify in a murder trial that he had

Colquit *v.* State.

said, on some occasion when defendant was not present, that he " would not kill a dog like he, defendant, killed that man." (*Post, pp. 388–390.*)

6. SAME. *Same.*

And this ruling is not relieved of its erroneous character by the fact that the witness made said statement, detailing his former expression of opinion in answer to a question asked by the State on re-examination calling for the remainder of a conversation inquired about on cross-examination, but not in relation to this particular matter. (*Post, pp. 388–390.*)

Case cited: Greer *v.* State, 6 Bax., 629.

---

FROM SHELBY.

---

Appeal in error from the Criminal Court of Shelby County. L. P. COOPER, J.

HANCOCK & POSTON and JOHN T. MOSS for Colquit.

Attorney-general PICKLE for State.

MCALISTER, J. Colquit was convicted of murder in the second degree for killing one Fred. Hunt, colored, and sentenced to the penitentiary for twenty years. He has appealed in error.

The first assignment is that the Court erred in permitting the State to introduce in evidence the verdict of the Coroner's jury on the inquisition of this homicide. The verdict was that Colquit killed Hunt, and "said killing was, in our opinion, a cold-blooded murder." Counsel for the prisoner excepted

at the time to the evidence, but the Court over-ruled the objection and permitted the verdict of the Coroner's jury to be read. On the following morning, however, the Court, of its own motion, withdrew this evidence, and instructed the jury to give it no consideration.

The question of the admissibility of such evidence has never been decided by this Court, so far as we are informed, and yet it frequently arises in the lower Courts. We have found, in our examination of the question, precedents for its introduction in civil cases, but no criminal case in which it was admitted. The case of *United States Life Insurance Co.* v. *Killgast*, 6 Law. Rep. Annotated, 65, was an action on a policy of life insurance. The defendant company relied on a clause of the policy which provided that if, within three years from the date of the policy, the insured should die by any act of self-destruction whatever, the policy should become null and void. It was shown that the insured died by an act of self-destruction—to wit, by shooting himself with a pistol. On the trial, the defendant company offered in evidence a certified copy of the Coroner's inquest, which showed on its face that the insured came to his death by a pistol shot, fired by the hand of deceased, while laboring under a fit of temporary insanity. The Court below excluded this evidence. The Supreme Court of Illinois held, on appeal, viz.: "We are satisfied, both upon principle and authority, that the Coroner's in-

quisition was admissible.'' The inquisition was made
by a public officer, acting under the sanction of an
official oath, in discharge of a public duty enjoined
upon him by the law, and, when it is returned into
court and filed, we see no reason why it should
not be competent evidence, tending to prove any
matter properly before the Coroner which appears
upon the face of the inquisition. We do not hold
that such evidence is conclusive, but only that it is
competent evidence to be considered.''

The Court cited 1 Greenleaf on Evidence, Sec.
556; 2 Phill. on Ev. (5th Am. Ed.), 262; 2 Taylor
on Ev. (6th Ed.), Sec. 1437; Starkie on Ev., 1309.
In the latter authority it is stated that in *Sergesol*
v. *Sealy*, 2 Atk., 412, Lord Hardwick said that in-
quisitions of lunacy and inquisitions *post mortem* were
always admissible, though not conclusive. In the
case of *Burridge* v. *Earl of Sussex*, 2 Ld. Raym,
1292, an inquisition *post mortem*, setting out the tenor
of a deed, was held to be evidence of the deed.
But no case has been cited, nor have we been able,
in our examinations of this question, to find a case
where such evidence was held admissible in a crim-
inal case. It was held in *State* v. *Cecil Co.*, 54
Md., 426, presumably a criminal case, that the in-
quisition of a coroner's jury is inadmissible to prove
that County Commissioners were negligent in not
providing a ''safe and suitable crossing over a creek
while they were repairing a bridge over same.''

It was said by this Court, in *Galloway* v. *Shelby*

*County*, 7 Lea, 121, "the Coroner's inquest is no part of a criminal prosecution, although it may uncover facts which may lead to one, but it is, as its terms import, an inquiry to ascertain the causes and circumstances attending the death," etc.

It is not a part of the prosecution, and we do not see upon what ground it is admissible. Such an inquisition is generally conducted in the absence of the accused, with no opportunity to offer testimony or cross-examine witnesses, and is a proceeding wholly *ex parte*. The verdict of the Coroner's jury in this case that "this was a cold-blooded murder," was the expression of an opinion touching the very issue submitted to the determination of the jury, and such evidence was manifestly incompetent.

But, as facetiously remarked by an eminent member of the bar, the prisoner has no vested rights in the mistakes of the trial Judge, and, if the illegal evidence is withdrawn and the jury admonished to give it no consideration, the trial Court has done all that is practicable to correct the error. In this case the trial Judge, after having become satisfied that the evidence was incompetent and illegal, withdrew it from the jury and instructed them not to consider it. He repeated that admonition in his charge, and the jury thoroughly understood that the Coroner's inquest was not before them. It has been repeatedly held by this Court that, if incompetent proof go to the jury, and the Court afterwards definitely withdraw it, with proper instructions, it is

no cause for reversal. *Railroad* v. *Humphreys,* 12 Lea, 200; *Green* v. *State,* 97 Tenn., 59–62.

The second assignment is that the Court erred in refusing to admit the declarations of the prisoner made prior to the homicide. The defendant offered to prove that, the day before the shooting, he went to the witness and stated that he had had trouble with the deceased, and that deceased had threatened him; and defendant asked witness' advice. Witness advised him "not to carry a pistol or anything of that sort, but, if defendant thought it was necessary to carry one, to go down to the Chief of Police and get permission to carry one." Defendant offered, in this connection, to prove that, on the next day succeeding the conversation just stated, and on the same day of the homicide, defendant went to the police station and called for the Chief of Police, but the latter was absent. Defendant stated to witness that a man had been hanging around his house and making threats. Witness said to him that a man had a right to defend his own house. The Court excluded the statements, upon the ground that they were self-serving declarations and were not part of the *res gestæ.*

We think the action of the Court was correct. "When the nature of a particular act is questioned, a contemporary declaration by the party who does the act is evidence to explain it." 1 Starkie on Ev., 48. This principle was illustrated in *Evans* v. *Jones,* 8 Yer., 463, where the question for the jury to decide

Colquit v. State.

was whether Jones, by abandonment of his reservation, had forfeited his right to it. In order that his removal should have that effect, it must have been voluntary. His declarations at the time that a certain person came and threatened him are admissible. *Kirby* v. *State*, 7 Yer., 259; *Kirby* v. *State*, 9 Yer., 383. See authorities in 2 Webb & Meigs' Digest, 1610. But, in the present case, the act of the defendant in going to the witness, Sellers, and to the police station, and his declarations made at the time, are not called into question or involved in this case. There is no litigated act to be explained nor motive to be ascribed to conduct. These declarations are not part of the *res gestæ*, but merely self-serving. 2 Wharton on Evidence, Secs. 1100, 1101. In *Irvine* v. *State*, 20 Pickle, 138, this Court said: "The rule seems to be well established that, wherever the act of a party is in issue and may be put in evidence, what he said at the time of doing the act calculated to explain it or make that clear which otherwise might be doubtful, is equally competent; but the declaration must be so connected with the act as to make the two constitute one and the same transaction. When this concurrence takes place, then the declaration is but the articulate voice of the act."

The third assignment is that the Court erred in excluding proof offered by defendant to the effect that shortly before the homicide, on two different occasions, a man came to defendant's house about or

after midnight, aroused the people therein, and asked to see Colquitt; refusing to tell his name or what he wanted with him, but said he wanted to whisper something in his ear alone. The Court very properly ruled that, unless deceased could in some way be connected with these nocturnal visits, the evidence was inadmissible.

The fourth assignment is the Court erred in admitting, over defendant's objections, statement of witness Hollister that he told Divine thât he, Hollister, "would not kill a dog like, he, defendant, killed that man."

It is stated that the Court permitted this statement of the witness, on his re-examination, to go to the jury, on the ground that defendant's attorney had asked the witness, on cross-examination, as to his conversation with Divine. The only question asked witness, by defendant's attorney in regard to his conversation with Divine, was if he did not state to Divine that only one man was on the sidewalk at the time the shooting began. The witness replied, "I do not remember telling him there was only one. I know I saw two." This was all that was asked by defendant's counsel and the whole of the witness's reply on that subject. The question was asked on cross-examination. The Attorney-general had asked the witness, on his original examination, if he was sure there were two men together when defendant fired his first shot, and the witness stated, "Yes, I am sure of that." Now, on cross-exami-

nation, defendant's counsel asked the witness this question, viz.: "Didn't you tell Mr. Divine at Mr. Leslie's house about a week before the last setting of this case for trial, that there was only one person on the sidewalk when the shooting began?" The witness replied, as already stated, "I do not remember telling him there was only one man; I know there were two."

On redirect examination the Attorney-general stated to witness, "They asked you about a conversation with Mr. Divine; where was that conversation?" Witness replied, at 228 Vance street. The witness then proceeded to state the details of the conversation, and concluded by stating that he told Mr. Divine, "I would not kill a dog like defendant killed that man" (deceased). Defendant's counsel objected to the statement of the witness. The Court remarked, "You asked about the conversation. You can't take out the part that suits you, and reject the other part." Defendant's counsel insisted that the opinion of the witness was not responsive to any question asked by him. The Court replied, "The whole conversation is responsive to it. You cannot take a part of it and reject the other."

We think this evidence was highly prejudicial to the defendant, and incompetent. It was the expression of an opinion of an eye-witness to the killing, of its cruelty and atrocity. No conversation had been called for by defendant's counsel on cross-examination. Counsel simply asked the witness if he

had not stated to Divine, on a certain occasion, that only one man was on the sidewalk when the shooting began. The State was, of course, entitled to all that was said on that subject, but not to an opinion expressed by the witness as to the cruelty of the killing. In *Greer* v. *State*, 6 Baxter, 629, it appeared that counsel for defendant asked a witness if he had made a certain statement to A, to wit: "that he only wanted to get one swear at defendant, and he would hang him," etc. The witness denied that he had made the statement. In re-examination, the Attorney-general asked the witness to state all he said to A in that connection, which was objected to by defendant. The objection was overruled by the Court, and the witness was permitted to give the details of a quarrel between himself and defendant, in which the defendant cursed him and used very abusive and insulting language towards him. The Court said this was a misapplication of a very familiar rule of evidence, that, when one party brings out a part of a conversation, the other is entitled, by way of explanation, and as a matter of right, to all that was said in that conversation, though otherwise it might have been incompetent in that form. "Here," said the Court, "the defendant did not, by his question, bring out a part of a conversation by way of proving facts favorable to his side of the case, but only asked if the witness made a certain statement, which he positively denied. This gave the other

Colquit *v.* State.

party clearly no right to introduce an entire conversation, that might injuriously affect the defendant, about a matter not in any way connected with the case under interrogation and shedding no light whatever on it.''

We think that case applicable in the present instance, and that the opinion of the witness was incompetent, nor admissible under the claim that defendant's counsel had called for a conversation.

For these reasons, the judgment is reversed and the cause remanded for a new trial.