John B. Arterburn, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

391 S.W.2d 648.

(*Jackson,* April Term, 1965.)

Opinion filed May 24, 1965.

GLENN W. NASH, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, MARNE S. MATHERNE, Assistant Attorney General, for defendant in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Plaintiff-in-error, hereinafter referred to as defendant, was convicted of voluntary manslaughter and carrying a pistol with the intent to go armed. He was sentenced to confinement in the penitentiary for a term of not more than two years upon the verdict of voluntary manslaughter, and to eleven months and twenty-nine days in the workhouse and a fine of $50.00 for carrying a pistol, both sentences to be served concurrently.

Defendant was sixty-one years of age and was indicted for the murder of his son, Frederick Merle Arterburn, of the age of thirty-six years.

Defendant resided in Memphis but owned and maintained a cabin for his pleasure at Sardis Lake in Mis-

sissippi. He had gone to the cabin for rest on the weekend of November 30, 1963, the date of the tragedy. He was joined there by his deceased son and his grandson, Danny Arterburn, of the age of thirteen years.

Defendant and his son drank some whisky during the day. They drove around the lake in the son's car. Defendant was driving and on returning to the cabin, the defendant failed to set the brakes on the son's car and it rolled into a ditch which caused a slight damage. Defendant and his son engaged in an argument as to who should pay for this damage. An altercation ensued and blows with their fists were exchanged.

Thereafter, the three got into defendant's station wagon in which were some fire arms used for target practice and a loaded thirty-eight caliber pistol. Defendant drove. The grandson sat on the front seat between defendant and his father.

Defendant and his son continued to quarrel. The car was stopped several times and more argument and the exchange of physical blows would occur.

When they reached Highway 51 and Shelby Drive in Shelby County, defendant's son ordered the defendant to stop the station wagon because of a remark made by defendant about his son's wife.

The deceased threatened to beat his father. They engaged in another fist fight. After the fight, the deceased sat down on the right side of the front seat of the car with one foot inside and the other on the outside. The right door was open and Danny was sitting in the front seat next to his father. Defendant got the pistol from behind the front seat on the driver's side and walked in front of the car and shot his son.

246

Danny ran to a house for help and the defendant drove to a filling station and gave the pistol to the operator of the station. He also requested him to call the police.

Defendant was indicted for murder and carrying a pistol. The cases were consolidated for trial. The jury, as stated, found the defendant guilty of voluntary manslaughter and unlawfully carrying a pistol. The trial judge overruled defendant's motion for a new trial and sentenced defendant as hereinabove set out.

Defendant has appealed to this Court and has assigned forty-one errors.

By assignments of error one and three, defendant insists the evidence preponderates against the verdict of the jury and in favor of the innocence of the accused.

It is a well settled rule in this State a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant the evidence preponderates against the verdict and in favor of his innocence. *White v. State*, 210 Tenn. 78, 356 S.W.2d 411 (1962); *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963).

As said by Mr. Justice Dyer in the case of *Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107 (1964):

"The verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence." See *White v. State* supra;

*McBee v. State,* supra; *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962).

█ This Court, in reviewing the record on appeal from a conviction, is bound by the rule, "that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court." *Holt v. State,* supra; *McBee v. State,* supra.

The defendant and his grandson, Danny, were the only eye witnesses to the homicide. Danny testified his father and defendant had been engaged in an argument and a physical altercation off and on all afternoon of the day of the homicide. He stated both men had been drinking intoxicating liquors to some extent.

He further testified when defendant made a remark about the wife of the deceased, the deceased demanded the defendant stop the car and told defendant he was going to beat him up. The defendant stopped the car and the two men engaged in another physical altercation.

He then stated, after the two stopped fighting, deceased sat down on the right-hand side of the front seat of the station wagon with the door open. He had one foot on the inside and one on the outside of the car and was bending over. Defendant got the pistol from behind the driver's side of the front seat. He told deceased he was going to kill him. He walked around the front of the car and shot the deceased three times. Danny was sitting on the front seat with his father when he was shot and his father was seated when shot.

It is undisputed the shots were the cause of his death.

The defendant admitted he had drunk some whisky but denied he was drunk. He stated the deceased was drunk and quarrelsome; that he was cursing various members of the family.

He denied he had struck the deceased but insisted the deceased had beaten him very badly.

He also stated he did not remember what happened after the car was stopped the last time and he and his son got out of the car. He did not remember getting the pistol and shooting his son, but did realize what had happened later.

On cross examination, he admitted he knew the pistol was loaded and he had a "faint recollection" of walking around the car with the pistol in his hand, but was unable to remember what happened thereafter.

A number of character witnesses testified the defendant's reputation for peace and quietude was good, and that of the deceased, when drinking, was bad. That deceased had the reputation of being vicious and prone to fight when drinking, although he was not known to carry weapons of any kind.

Dr. Jerry Francisco testified he examined the body of deceased. He was five feet and six inches tall and weighed one hundred forty pounds. He stated he found the alcohol content level in deceased's bloodstream was .33% representing between twelve and sixteen ounces of one hundred proof Bourbon whisky or twelve to sixteen twelve ounce cans of beer. He testified this condition would affect the reaction time and judgment of the individual, but he was unable to say how much.

Dr. I. Ralph Goldman testified he examined defendant on the Monday following the homicide on Saturday. He

stated the defendant was a well developed and well nourished man of small frame. He was very much upset and cried during the examination.

His examination disclosed multiple contusions and abrasions of his face, nose, head, arms, left elbow and right leg; a mild brain concussion; and that he was in a severe anxiety state.

From the foregoing evidence, we cannot say the evidence introduced on the trial preponderates against the verdict of the jury and in favor of the innocence of the defendant. Therefore, assignments one and three are overruled.

Assignments two and four contend the verdict is not supported in law.

T.C.A. Section 39-2409 defines manslaughter as follows:

"Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act."

In the case of *Smith v. State,* 212 Tenn. 510, 370 S.W.2d 543 (1963), voluntary manslaughter is defined to be:

"[T]he unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice."

We think the jury was justified, under the evidence, in finding the defendant acted under a sudden heat or passion produced or provoked by the physical abuse of

the deceased on the body of defendant which obscured his reason, and caused him to take the pistol from the car, walk around it and shoot his son while he was sitting in the car. *Smith v. State*, supra; *Whitsett v. State*, 201 Tenn. 317, 299 S.W.2d 2, (1957); *Davis v. State*, 161 Tenn. 23, 28 S.W.2d 993 (1930).

The conviction of voluntary manslaughter did not bar a prosecution for carrying the pistol with which defendant killed his son. *Grindstaff v. State*, 172 Tenn. 77, 110 S.W.2d 309 (1937).

It is further insisted in behalf of the defendant the homicide was committed in self-defense. There is some evidence to support this theory. The deceased's reputation for peace and quietude was bad. Defendant testified he was afraid of what was going to happen to him at the hands of deceased when the car was stopped at the scene of the crime. We think, however, defendant's testimony failed to support this defense. That is, his testimony fails to show that, at the moment of the shooting, he acted upon an honest belief, based upon reasonable grounds, it was necessary for him to kill his son to save his own life. He testified he did not remember taking the pistol from the car and shooting the deceased. He did not realize what had happened until after he had shot deceased. *Bostick v. State*, 210 Tenn. 620, 360 S.W.2d 472 (1962).

Furthermore, there is ample evidence upon which a jury could reach an opposite conclusion the deceased had withdrawn from the fight and returned to his seat in the car, when, under the undisputed proof, defendant shot the deceased while seated and bending over. Thus, it was unreasonable, under the circumstances, for the

defendant to assume his life was in danger. *Sherman v. State,* 125 Tenn. 19, 140 S.W. 209 (1911).

■ Moreover, it is apparent from the evidence in this case it was the province of the jury to settle the issue of self-defense; and, the jury having seen and heard the witnesses and passed on their credibility, and decided the issues in favor of the State's contention, we cannot say the evidence preponderates against that finding. *Cooley v. State,* 174 Tenn. 168, 124 S.W.2d 250 (1939); *Johnson v. State,* 187 Tenn. 438, 215 S.W.2d 816 (1948). We overrule assignments two and four.

Assignment five complains of the action of the trial judge in excluding certain character testimony offered in behalf of defendant because the witness was not familiar with the reputation of defendant in the community in which he resided, but only knew his reputation among his fellow employees.

The proof of character, good or bad, is restricted to general reputation. *Keith v. State,* 127 Tenn. 40, 152 S.W. 1029 (1912).

In 22A C.J.S. Criminal Law sec. 677(3), page 710 it is said:

"As a general rule, character evidence is restricted in its admissibility to proof of accused's reputation in the community where he has lived or has been known; and evidence of reputation among the members of a particular class of people is ordinarily inadmissible.

\*　\*　\*　\*　\*　\*

"However, it has been held that the inquiry may be extended to any community, society, or neighborhood where accused is known or has a well-known or estab-

lished reputation, such as the neighborhood in which he was in the habit of dealing; and, while it has been held that evidence of reputation at a place of business or among business associates is not admissible, other decisions have admitted such evidence in view of the peculiar circumstances involved.''

In the case of *Hamilton v. State,* 129 Fla. 219, 176 So. 89, 112 A.L.R. 1013, the defendant worked long hours at a hotel and did not know her neighbors in the community in which she resided very well; the Court, in permitting evidence of her reputation among her fellow employees, said:

''But we are persuaded that 'the community' or 'neighborhood' whose estimate of a person's character or reputation is most important is the community or neighborhood where he or she is best known, and that under the peculiar circumstances here involved, the words 'community' or 'neighborhood' should be expanded to take in the place in the same city where the defendant worked.''

In the case of *People v. Colantone,* 243 N.Y. 134, 152 N.E. 700 (1926), the rule is stated to be:

''The determining factor is whether the community in which the defendant has lived his life is sufficiently large for the persons to become acquainted with his character and to form a general * * * reputation. The cases are quite right which exclude evidence of reputation among such a small class of persons or business associates, as to make it, not a general reputation, but rather the evidence of the individual in independent dealings.''

■ We are of the opinion the correct rule is that evidence of reputation and character should be generally limited to the community in which the defendant resides, and only extended to other areas when special circumstances demand otherwise. See 1 Underhill, Criminal Evidence, Fifth Edition, Section 195; 1 Wharton's Criminal Evidence, Twelfth Edition, Anderson, Section 222; Annotation, 112 A.L.R., 1020.

■■ Although admissibility of reputation or character evidence is discretionary, such discretion is reviewable and will be reversed in case of an abuse. *Strader v. State,* 208 Tenn. 192, 344 S.W.2d 546, 87 A.L.R.2d 963 (1961). In the instant case, the record shows eleven witnesses who knew defendant's reputation in the community in which he resided testified his reputation for peace and quietude was good. There were no special circumstances shown to invoke the exception to the general rule and justify the admissibility of proof of defendant's reputation among his fellow employees. Under the circumstances, the trial judge did not abuse his discretion in refusing to admit the testimony of these witnesses. Furthermore, the evidence would have been cumulative; and, therefore, could not have prejudiced defendant or affected the merits of the case. *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759 (1959); *Frazier v. State,* 117 Tenn. 430, 100 S.W. 94 (1906); T.C.A. Section 27-117. We overrule assignment five.

■ Assignments six, seven and nineteen complain of the action of the trial judge in not permitting Counsel for defendant to read that portion of the deposition of Dr. Goldman in which he related a detailed account by the defendant to him of the altercation between defendant and deceased prior to the homicide. These statements

made to Dr. Goldman two days later were self-serving and were not a part of the res gestae. They were inadmissible as hearsay. *Denton v. State,* 31 Tenn. 279 (1851); *Colquit v. State,* 107 Tenn. 381, 64 S.W. 713 (1901). Defendant testified in his own behalf at the trial. We overrule the assignments.

By assignments eight, nine and ten it is insisted the trial judge erred in excluding the testimony of Dr. Goldman to the effect defendant's sense of inhibition would be affected by the brain concussion. The trial judge ruled that inhibition means so many things that to permit the testimony would be confusing to the jury. However, he permitted the witness to state the brain concussion could cause loss of memory, and the defendant had been severely beaten.

It is well settled that the admission of expert testimony is largely in the discretion of the trial judge. *Fortune v. State,* 197 Tenn. 691, 277 S.W.2d 381 (1955); 2 Wharton, supra, Section 514. In view of the circumstances as related, we do not think the trial judge abused his discretion in this regard, and the assignments are overruled.

Assignments eleven and twelve complain of the action of the trial judge in excluding the following testimony of Dr. Goldman:

"Q. If Mr. Arterburn had not been beaten, bearing in mind and based upon your examination of him, considering his age and general physical condition, would he be physically able to defend himself in a fist fight against a young man in good physical condition in his 30's?

"A. I don't think this man was physically endowed to cope with a young man in his 30's."

The trial court disallowed this question as being unfair, because it was not phrased so as to include the fact that the deceased had .33% alcohol content in his blood. In this we concur.

Dr. Goldman also testified:

"A. The way he was bruised and battered, I will state unequivocally he could not have run away from a young man."

The trial court excluded this as being speculative, as being based on insufficient facts, absence of fear, etc.; and as invading the province of the jury.

This was a conclusion which the ordinary practical mind could reach, and was an ultimate fact bearing on the issue of self-defense. It is an invasion of the province of the jury to permit an expert to testify to an ultimate fact where the conclusion is one which the ordinary practical mind could reach. *McCravy v. State,* 133 Tenn. 358, 181 S.W. 165 (1915). Thus, the trial judge did not abuse his discretion in excluding the testimony, and the assignments are overruled.

Assignments thirteen and fourteen insist it was error for the trial judge to exclude the testimony of Dr. Goldman to the effect the normal reaction of the person, who has been beaten to such an extent he is too weak to fight or run, is "survival or self-defense." We overrule these assignments for the same reason as stated in overruling assignment twelve; that is, the answer invaded the province of the jury.

Assignment fifteen complains of the exclusion of the testimony of Dr. Goldman to the effect he did not

think defendant had a sense of malice at the time of the homicide but was simply trying to protect himself. Obviously this was an ultimate fact to be determined by the jury. The jury found the homicide was committed without malice. We overrule the assignment.

Assignments sixteen, seventeen and eighteen complain of the exclusion of the testimony of Dr. Goldman to the effect he was of the opinion from his examination of defendant two days after the homicide that defendant lost control of his faculties, except for personal safety; that he had no sense of malice in shooting his son; and that in his beaten condition he was unable to think clearly. This testimony was to ultimate facts bearing on the issue of self-defense and were within the province of the jury to determine. We overrule these assignments.

Assignment twenty complains of the refusal of the trial judge to charge the following special request:

"It is not necessary that the great personal violence which is being inflicted or threatened to be inflicted upon a person be such as to actually endanger a life."

In *Rippy v. State,* 39 Tenn. 217 (1858), this Court, speaking through Judge Caruthers, said:

"The law on this subject is, to excuse a homicide, the danger of life, or great bodily injury, must either be real, or honestly believed to be so at the time, and upon sufficient ground. * * * If any less injury than death or great bodily harm is feared or indicated by the circumstances, the plea of self-defense will not be sustained, but the degree of the crime may be reduced." See also *Whitlock v. State,* 187 Tenn. 522, 216 S.W.2d

22, 24 (1948) ; *Cathey v. State,* 191 Tenn. 617, 624, 235 S.W.2d 601 (1951).

We have read the trial court's charge on self-defense and it is full, fair, clear and unconfused and correctly states the law. The assignment is overruled.

Assignments twenty-one through twenty-eight, inclusive, complain of the refusal of the trial judge to charge special requests relative to the presumption of the innocence of the defendant.

We have read the charge and we quote:

"You enter upon this investigation with the presumption that the defendant is not guilty of any crime and this presumption stands as a witness for him until it is rebutted and overturned by competent and credible proof.

"It is therefore incumbent upon the State, before you can convict the defendant, to establish, to your satisfaction, beyond a reasonable doubt—

"(1) What the law calls the corpus delicti, the body of the crime; that is, that Frederick M. Arterburn has been killed.

"(2) The venue; that is, that he was killed in the County of Shelby, and State of Tennessee, and before the finding of the indictment.

"(3) That the defendant killed him, and that the killing was done in such manner, by such means, and under such circumstances as would make him guilty under the law of some one of the grades of felonious homicides heretofore defined and explained to you."

The foregoing is a correct statement of the law with regard to the presumption of innocence. *Cald-*

*well v. State,* 164, Tenn. 325, 48 S.W.2d 1087 (1932). It was not error for the trial judge to refuse to repeat the charge as contained in defendant's special requests couched in different language.

■ Moreover, in view of the charge we are unable to understand how the refusal of the trial judge to elaborate upon the presumption of innocence by denying the requests affirmatively affected the results of the trial. This being true, this Court will not reverse. T.C.A. Section 27-117; *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933 (1960). We overrule these assignments.

Assignments twenty-nine through thirty-six, inclusive, complain of the refusal of the trial court to grant special requests for instructions defining reasonable doubt.

The trial judge charged the following:

"Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. The absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense."

He further charged, in instructing the jury as to the various degrees of homicide, that a reasonable doubt of defendant's guilt of the offense would acquit him of that homicide, and the jury would next inquire whether he was guilty beyond a reasonable doubt of the next lesser degree, and so on.

The general charge also contained the following:

"If, upon all the proof in the case, you have a reasonable doubt of the prisoner's guilt of any of the offenses defined and explained to you, it is your duty to acquit the defendant, and your verdict will be "not guilty.'"

Thus, the special requests were covered by the general charge and it was not error for the Court to refuse them. *Hill v. State,* 73 Tenn. 725 (1879) ; *Bostick v. State,* supra.

By assignments thirty-seven and thirty-eight, defendant insists the trial judge erred by refusing to charge special requests as to the testimony of children.

No objection to the testimony of Danny Arterburn was made during the trial.

The question of the competency of a witness is a matter for determination by the trial judge. T.C.A. Section 24-101. It has been held a child of eight years of age who understood the nature of an oath and had a well defined idea of future rewards and punishments, was competent to testify. *Logston v. State,* 50 Tenn. 414 (1872) ; *Vincent v. State,* 50 Tenn. 120 (1871).

Where no objection to the testimony of a child is made, adequate examination of the child and capacity to testify will be presumed and the trial judge will not be put in error for refusing a special request to charge that due to the youth of the witness he was incapacitated to testify. *Bright v. State,* 191 Tenn. 249, 232 S.W.2d 53 (1950) ; *Burke v. Ellis,* 105 Tenn. 702, 58 S.W. 855 (1900).

The testimony of a child when admitted, should be tested by the same standards of credibility as apply to other witnesses. T.C.A. Section 24-101. Counsel has

not offered any reason why the standards to test the credibility of children should be more stringent than the standards used to test the credibility of witnesses who have lost their innocence characteristic of children. The general charge of the trial judge contained a complete and correct charge on the principles the jury should be guided in testing the credibilty of the witnesses. We are satisfied the trial court was not in error in refusing these special requests. We overrule the assignments.

Assignments thirty-nine and forty challenge the refusal of the trial court to charge special request on the subject of character evidence. This matter was covered in the general charge and defendant makes no argument in support of these assignments. Under the circumstances, we cannot put the trial judge in error for refusing the request. *Bostick v. State,* supra.

Finally, assignment forty-one complains of the refusal of the court to charge a special request to the effect that an inference could be drawn by the jury favorable to the theory of the defendant from the fact that State failed to call one of the officers, Judson Ghormley, to testify.

This assignment has for its basis Ghormley and Anderton answered the call of the filling station operator and took defendant into custody. They took defendant to the scene of the homicide and placed him in the custody of Detective Rivalto and Patrolman Miller for questioning.

Anderton, Ghormley's partner, testified. Lieutenant Vandiveer and Rivalto also testified. Miller did not testify.

There is no showing that the failure of Ghormley and Miller to testify prejudiced the defendant. Their testimony would have been cumulative to that of their

partners who did testify. Thus, defendant has failed to affirmatively show the failure of these witnesses to testify resulted in any prejudice to him or affected the results of the trial. Accordingly, this Court will not reverse the judgment of the trial court for the error assigned. *Frazier v. State,* supra; *Caldwell v. State,* supra; T.C.A. Section 27-117.

We have carefully considered the voluminous record of the trial and Counsel's very able, well prepared and exhaustive brief of eighty-nine pages in behalf of defendant. We must observe Counsel for defendant should be commended for his very able and valiant effort to clear his client both in the trial court and this Court.

However, we are satisfied the defendant has received a fair and impartial trial; and for the foregoing reasons the judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and HOLMES, JUSTICES, concur.