GEORGE MONROE PRYOR, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

400 S.W.2d 700.

(*Jackson,* April Term, 1965.)

Opinion filed March 9, 1966.

G. EDWARD DRAPER and ROBERT A. TILLMAN, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Assistant Attorney General, for defendant in error.

MR. JUSTICE CRESON delivered the opinion of the Court.

The parties will hereinafter be referred to as they appeared in the Trial Court; that is, plaintiff in error, George Monroe Pryor, as the defendant, and the defendant in error as the State.

On December 29, 1964, the defendant was indicted for the alleged rape of one Dorothy Mae Miller, on January 18, 1964, and for feloniously, carnally knowing and abusing said Dorothy Mae Miller. The defendant was tried pursuant to the above indictment on April 5, 6 and 7, 1965. The jury found the defendant guilty of unlawful carnal knowledge of a female under twelve years of age, as charged in the second count of the indictment, and fixed his punishment at life imprisonment in the State Penitentiary. On May 7, 1965, defendant's motion for a

new trial was overruled and, subsequent to this, appeal has been perfected to this Court.

Defendant's Assignments of Error are as follows:

"1. The evidence in this cause was insufficient to sustain the verdict of the jury.

2. The trial court erred in admitting in evidence over the objection of defendant an oral statement allegedly made to Lieutenant Marshall of the City of Memphis Police Department which statement was supposed to have been made after the defendant was indicted and out on bond and before the defendant procured counsel and without explaining the rights of defendant to him. The said statement was highly damaging and it was manifest error to have it admitted.

3. The court erred in allowing the verdict of the jury to stand after the highly damaging statement "I don't know why I did it" was brought before the jury even though the court later instructed the jury not to consider the statement for any purpose. It is extremely difficult for a jury to forget about statements like this once they have been uttered in front of them."

■ Defendant's Assignment of Error 1, to the effect that the evidence preponderates against the verdict and in favor of the innocence of the defendant must be tested by the rule in this State that a jury's verdict of guilty approved by the Trial Judge establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attached to the defendant in the trial court, and raises a presumption of guilt, putting on defendant the burden of showing, on appeal, that the evidence preponderates against the verdict and in favor of innocence. *Cooper v. State* (1909), 123 Tenn. 37,

138 S.W. 826; *Holt v. State* (1962), 210 Tenn. 188, 357 S.W.2d 57; *McBee v. State* (1963), 213 Tenn. 15, 372 S.W.2d 173.

While the testimony contained in this record discloses conflicts as to precisely what occurred on January 18, 1964, the following represents a summary of those facts which the jury has necessarily and justifiably found to be true. The victim, Dorothy Mae Miller, a Negro, eleven years of age at the time of the alleged occurrence, was baby-sitting for one Fannie Mae Whatley. For this reason, she was in said Fannie Mae Whatley's apartment from about 3:30 P.M. on Friday, January 17, 1964, until shortly after 6:30 P.M., on Saturday, January 18, 1964. The defendant, George Monroe Pryor, was the boyfriend of said Fannie Mae Whatley, and was alone with the victim in the apartment, except for the presence of a three month old baby, from about 5:00 P.M. to 6:30 P.M. on Saturday, January 18, 1964. Other persons were present for brief periods. At about 5:30 P.M., one Alfred Hibler visited the apartment, and for a period of about fifteen minutes the aforementioned Fannie Mae Whatley came to her apartment prior to leaving to go to the grocery store. It is the testimony of Dorothy Mae Miller that the defendant took her into the back bedroom and raped her, first at about 5:00 o'clock P.M., and a second time between 6:00 and 6:30 P.M. The medical testimony establishes that said Dorothy Mae Miller had sexual intercourse within twenty-four hours before medical examination at between 9:00 and 10:00 P.M. on January 18, 1964. It is further the opinion of the medical experts that before that twenty-four hour period, Dorothy Mae Miller, was a virgin. Dorothy Mae Miller received a phone call from her mother, Cora Mae Miller, at about

6:00 P.M., on January 18, 1964. Her mother was disturbed by the way her daughter talked over the telephone and it was for this reason that she proceeded immediately from her home to the home of Fannie Mae Whatley.

Police officers arriving at the apartment of Fannie Mae Whatley that evening testified that they found something which appeared to be blood on toilet tissue in the commode, and on the bed. It is also the testimony of police officers that in examining the defendant later that night, they had said defendant open his pants and found semen on the inside of defendant's pants.

The defendant emphatically denied having sexual intercourse with Dorothy Mae Miller, and tried to establish other reasons for the presence of the aforementioned incriminating evidence. It is clear that the jury chose to believe the witnesses for the State and to disbelieve, to a large degree, the testimony of defendant and his supporting witnesses. As the previously stated rule indicates, the jury settles all questions as to the credibility of the witnesses and fixes the weight to be given to their testimony. When the evidence in this record is considered against the background of that rule, this Court is led inescapably to the conclusion that the evidence does not preponderate against the verdict.

Defendant's Assignment of Error 2 asserts that the trial court erred in admitting in evidence over defendant's objection an oral statement allegedly made to Officer Marshall of the City of Memphis Police Department. This statement was allegedly made by the defendant after the defendant was charged with the crime and while defendant was out on bond. The statement was allegedly made by defendant outside the apartment

of Fannie Mae Whatley, to Officer Mashall. Officer Marshall was at the apartment of Fannie Mae Whatley to take photographs. This incident took place about one week after the defendant was charged with this crime. Officer Marshall said to the defendant, "George, what happened," and the defendant replied, "I don't know what come over me. I know I knew better." The defendant then proceeded to ask Officer Marshall if Officer Marshall thought it would be permissible for the defendant to go to Hot Springs to work. Before this evidence was admitted in the trial court, a hearing was held by the trial judge in the absence of the jury to determine its admissibility. Prior to this hearing, it had been established by the testimony of an Officer R. J. Turner, that the defendant had, on January 19, 1964, been advised as follows:

"We advised him he could have an attorney and that he had a right to make or not make a statement to us in regard to this complaint, and if he wanted to wait until he talked to his attorney, he could, and he did not have to make a statement to us if he did not want to."

At this time, that is, on January 19, 1964, the defendant made the following statement:

"I prefer not to make a statement."

No contention is made by the defendant that he had not been fully advised of his rights on January 19, 1964.

The statement to Officer Marshall, which forms the basis of this Assignment of Error, as stated, was made about a week after January 19, 1964, when the defendant was made aware of and obviously understood his right to counsel and to refrain from making any statement.

No contention is made that at any time the defendant requested counsel, and it is apparent that had such request been made, it would have been granted. In fact, counsel was appointed for the defendant by the Court when it was learned at arraignment that the defendant was unable to employ counsel of his own.

It appears from the record that the defendant was an old acquaintance of Officer Marshall and was aware that Officer Marshall was a police officer. From these facts, we cannot conclude that the admission of Officer Marshall's testimony into evidence in any way deprived the defendant of his constitutional rights to counsel or to remain silent.

The defendant relies heavily upon two recent United States Supreme Court decisions. *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and *Escobedo v. State of Illinois* (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. It is the opinion of this Court that these two cases are not controlling. In *Massiah,* a Federal District Court admitted into evidence a statement by the defendant made to a co-defendant, who was working with Federal authorities to obtain the defendant's confession. As a part of the planned scheme, the conversation between defendant and the co-defendant was monitored by Federal officers. The gravamen of the holding in *Massiah v. United States,* supra, is as follows:

"We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. It is true that in the *Spano* case, the defendant was interrogated in a police station,

while here the damaging testimony was elicited from the defendant without his knowledge while he was free on bail, but, as Judge Hays pointed out in his dissent in the Court of Appeals, 'if such a rule is to have any efficacy, it must apply to indirect or surreptitious interrogations, as well as those conducted in the jailhouse. In this case, Massiah was more seriously imposed upon * * * because he did not even know that he was under interrogation by a government agent.' 307 F.2d at 72-73."

\*     \*     \*     \*     \*     \*

"All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial."

In the case before this Court, the defendant was aware that he was making the statement to an agent of the State and with this knowledge, freely and voluntarily made this statement. Therefore, this Court feels that the holding in *Massiah v. United States,* supra, is not controlling.

In *Escobedo v. State of Illinois,* supra, the defendant had requested to confer with his counsel and had been refused the assistance of his counsel, who was present in the jail at the time of the interrogation from which the confession resulted. The defendant had not been made aware of his constitutional rights to counsel or to remain silent. The true rationale of that opinion appears from the following:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect,

the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the states by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U.S. [335], at 342, 83 S.Ct. [792], at 795 [9 L.Ed.2d 799], and that no statement elicited by the police during the interrogation may be used against him. at a criminal trial."

It was further said:

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' *Spano v. [People of State of] New York,* 360 U.S. 315, 327, 79 S.Ct. 1202, 1209 [3 L.Ed.2d 1265] (Stewart, J. concurring), by gathering information from witnesses and by other proper investigating efforts.' *Haynes v. [State of] Washington,* 373 U.S. 503, 519, 83 S.Ct. 1336, 1346 [10 L.Ed.2d 513]. We hold only that when the process shifts from investigatory to accusatory—when its focused on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

This Court feels that nothing in the case last cited changes the rule that a confession or admission by the defendant, freely and voluntarily made, is admissible in evidence; nor will the defendant be deprived of his constitutional rights to remain silent and to have the

assistance of counsel guaranteed him by the Fifth and Sixth Amendments to the United States Constitution, made applicable to State Court proceedings by the Fourteenth Amendment to the United States Constitution, by its admission in evidence.

This is also the law in this State, as enunciated in *Campbell v. State* (1964), 215 Tenn. 95, 384 S.W.2d 4. Thus we have for determination the question of whether or not the statement made by the defendant in this case was freely and voluntarily made. In the instant case, there is no contention that coercion was used in obtaining the statement. Also, there was no threat of reprisal or promise of reward. Further, the defendant had been advised of his constitutional right to remain silent and to the assistance of counsel; and, as shown by defendant's prior statement made on January 19, 1965, understood his right to remain silent. Further, there is no evidence that the defendant had ever been refused a request for counsel. Everything contained in this record tends to support the inference that, had such a request been made, at any time, it would have been granted. Thus, any contention in this case that the defendant's statement was not freely and voluntarily made would appear to have no basis in fact.

Defendant's Assignment of Error 3 asserts that the verdict of the jury should have been set aside because a statement by the defendant to a Memphis Police Officer, ''I don't know why I did it,'' was admitted into evidence. The record is uncontradicted that the statement was later stricken from the record and the jury instructed not to consider the same.

To give proper attention to this Assignment of Error, it is necessary to consider the circumstances under which

this statement came into evidence. Officer Robinson was testifying for the State concerning what occurred after the defendant was in the custody of the police. The following quote from the record shows the context in which the statement was made:

"Q. Now, I will ask you whether or not you asked him to do anything?

A. Yes, sir, I did.

Q. And what was that?

A. I asked him to unzip the fly on his pants.

Q. Why did you do this?

A. It is customary in a case like this case to do something like this because there is a possibility there might be some type of foreign matter on his pants.

Q. Did he comply with your request?

A. Yes, sir.

Q. Did you notice anything?

A. I noticed what appeared to be semen on the inside of his fly.

Q. Did you ask him about that?

A. I didn't ask him directly about that. I asked him what had come over him, and he said, 'I don't know why I did it.'

Q. He said, 'I don't know why I did it'?

A. Right.

Q. Did he make any other statements to you there that you can recall?

A. On the way to headquarters, after I talked to him —it wasn't on the way to headquarters because I didn't go to headquarters with him—later in talking with him he stated he had had some relations with some—(interrupted)

MR. TILLMAN: I will ask the Jury to be excused.

THE COURT: All right, gentlemen. Go to your room."

After the jury returned to the courtroom, they were instructed to totally disregard the testimony of Officer Robinson concerning what the defendant had said.

██ It appears from this record that the officer's statement was not truly responsive to the question asked. The Trial Judge's emphatic instruction to the jury to disregard this evidence for any purpose renders the original admission of this evidence harmless under the facts of this record. It is to be remembered that the subject matter here constitutes only one of two admissions of the defendant offered in evidence; one of which we have held to be clearly competent. Under the circumstances of this case, we are of opinion that this contention is without merit. In other words, the substance of what Assignment of Error 3 complains of falls within the holding of this Court in *Colquit v. State* (1901), 107 Tenn. 381, 64 S.W. 713, and *Irvine v. State* (1900), 104 Tenn. 132, 56 S.W. 845, rather than the admonition somewhat to the contrary found in *Landers v. State* (1928), 157 Tenn. 648, 11 S.W. 2d 868.

It is therefore apparent that the judgment of the trial court must be, and hereby is, affirmed, with costs against the defendant.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.