## FRANK BROWN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. April 16, 1969.

Certiorari Denied by Supreme Court June 2, 1969.

James G. Nave, Cleveland, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tenn., Lance D. Evans, Asst. Atty. Gen., Nashville, Tom J. Taylor, Dist. Atty. Gen., Cleveland, for defendant in error.

## OPINION

OLIVER, Judge.

Frank Brown, the plaintiff in error and defendant below, was convicted in the Criminal Court of Bradley County of assault with intent to commit second degree murder and was sentenced to imprisonment for one year in the State Penitentiary. His motion for a new trial being overruled, the defendant excepted and prayed and was granted and has perfected an appeal in the nature of a writ of error to this Court.

The first two Assignments of Error challenge the sufficiency of the evidence to warrant and sustain the verdict of the jury. In examining this contention, we are bound by the well-established rule, settled by numerous decisions of the Supreme Court of Tennessee, that a verdict of guilt, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case; that under such a verdict the presumption of innocence which the law throws around an accused and which stands as a witness

for him in his trial, disappears, and upon appeal that presumption of innocence is replaced by a presumption of guilt; that this Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused; that we may review the evidence only to determine whether it preponderates against the verdict; and that the defendant has the burden of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Turner v. State, 216 Tenn. 714, 394 S.W.2d 635; Chico v. State, 217 Tenn. 19, 394 S.W.2d 648; Johnson v. State, 217 Tenn. 234, 397 S.W.2d 170; Brenner v. State, 217 Tenn. 427, 398 S.W.2d 252; Owens v. State, 217 Tenn. 544, 399 S.W.2d 507; Harris v. State, 217 Tenn. 582, 399 S.W.2d 749; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768.

This rule governing appellate review of criminal convictions makes unnecessary and, indeed, inappropriate, any detailed discussion of the evidence pro and con. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

The evidence accredited by the jury may be summarized briefly. Mike Westfield, who was fifteen, was driving his father's car in the late afternoon of September 28, 1966 in Cleveland, Tennessee. With him were his

cousin Isbella Westfield and Alvin Porter. The motor stopped on Twentieth Street near the defendant's property. Unable to get it started again immediately, it was maneuvered to the side of the street by letting it roll backwards. Mike was acquainted with this misbehavior of the vehicle and knew that it would start again after letting it cool off. So the three youngsters sat inside the car and talked for about twenty minutes.

The defendant operated a junkyard on the adjacent property, and a roadway which was formerly a street ran through his property. While Mike was outside the car checking it, the defendant and an employee, J. B. Martin, were seen approaching on this roadway. The defendant yelled twice at him to stop. Seeing that the defendant had a shotgun, Mike became frightened and tried to get back into the car. As he was doing so the defendant shot him, shots striking him under his right arm and in the lower portion of his back. After Mike got into the rear seat of the car the defendant fired again, breaking out the rear window and hitting him in the head. The defendant then turned and walked back toward his house. Isabella Westfield then succeeded in getting the car started and took Mike to the hospital.

In his testimony, the defendant maintained that thieves had stolen much of his property from the junkyard; that he had repeatedly complained to the Sheriff's office to no avail; that Mike Westfield and Isbella Westfield were stealing five-gallon buckets of his plumbing fixtures and fittings and were putting them in the car, and that he fired to stop the theft when Mike ignored his demand to stop. His attitude in the whole matter is expressed in his testimony: "I think it is an awful good remedy. It must

have got the job done." Mike and Isbella denied that they were stealing or loading any of the defendant's property into the car.

The defendant did not offer J. B. Martin as a witness, whom he had hired to help him protect his property, and was most reluctant to give his name— giving as his reason that Martin did not want to become involved. His failure to produce Martin as a witness, without any showing of an effort to do so, gives rise to a presumption that if he had been presented as a witness his testimony would have been unfavorable to the defendant. Ford v. State, 184 Tenn. 443, 449, 201 S.W.2d 539; Harless v. State, 189 Tenn. 419, 422, 225 S.W.2d 258.

Clearly, the defendant has failed to carry the burden of demonstrating here that the evidence preponderates against the verdict of the jury and in favor of his innocence.

In his third and fourth Assignments of Error, the defendant insists that the trial court erred in not allowing him to testify about his property having been continually stolen over a period of time and that he had been unsuccessful in obtaining the protection of the law from the Sheriff. Notwithstanding that the trial court repeatedly sustained objections by the State to such testimony, defense counsel persisted in pursuing the matter through interrogation of the defendant and thereby effectively presented those contentions before the jury. Moreover, those matters were wholly irrelevant and immaterial and such testimony was incompetent and inadmissible for any purpose, as the trial court correctly held.

The defendant's fifth and sixth Assignments of Error may be considered together. His fifth Assignment is that the trial court erroneously charged the jury:

"Gentlemen, no one has the right to shoot another man for the commission of larceny or the commission of any other crime. The law never allows any man to judge or inflict any punishment upon his fellow man, except by due process of law.

\* \* \* \* \* \*

"A person does not have the right to shoot another or inflict punishment upon another under the guise of making an arrest or under the guise of self defense.

"A person does not have a right to shoot another person merely in the protection of his property, but if a person came to rob the owner and the larceny was directed more toward the person than to the property, a person may shoot in self defense. That is, he may be justified in shooting if in protecting his property he also was protecting his self."

The sixth Assignment relates to the refusal of the trial court to charge the following special request:

"If you find that Mike Westfield was in the actual perpetration of a felony, that is that of larceny, when he was shot, then you should acquit the defendant."

There is no merit in these last two Assignments of Error. They represent some misunderstanding of the applicable law. In 40 C.J.S. Homicide § 93, p. 954 it is said:

"An assault with intent to kill cannot be justified on the ground that it was necessary to prevent a mere

trespass on property or to expel an actual trespasser; but a person may lawfully repel force by force in defense of his property against one who manifestly intends, by violence or surprise, to commit a felony against it, and, if in making such defense, he takes or endangers the life of the felonious aggressor, the act is justifiable. Under a statute regarding resistance of an attempt to take property by 'force,' an attempted taking need not be by violence to justify forcible resistance.

"The owner may lawfully use such reasonable force as is necessary, under the circumstances, to protect or regain possession of his property, and what is such reasonable force is a question of fact for the jury. The criterion of necessity which justifies the use of force by the property owner in defense of his property is the apparent, and not the actual, necessity, and he will be judged by what a reasonable prudent man in good faith would do under such circumstances."

The subject is treated as follows in 40 Am.Jur.2d, Homicide, § 180, pp. 464-465:

"While the law justifies or excuses the taking of life when necessary to prevent commission of felonies, or in the defense or protection of one's dwelling house or habitation, one cannot defend his property, other than his habitation, to the extent of killing or inflicting serious bodily injury upon the aggressor for the mere purpose of preventing a trespass, where the invasion is made without force. While a person aggrieved by a trespass may repel the intruder by such force as may be reasonably necessary, short of taking human life or

inflicting great bodily harm, only in extreme cases can one endanger human life or do great bodily harm in defense of property. Although there is a suggestion in some of the cases that a destruction of property may justify a taking of life, or that the right to take life in defense of property may be a 'natural right,' yet its exercise is limited strictly to the prevention of forcible and atrocious crimes.

"In general, it may be said that the law countenances the taking of human life in connection with the defense of property only where an element of danger to the person of the slayer is present or where the slaying is necessary to prevent the commission of a felony. While an owner or lawful occupant of land may resist a forcible trespass upon the land, he cannot justify or excuse his act in killing another to prevent a mere trespass upon his property other than his habitation if the homicide was not necessary to prevent a forcible felony, or to protect his own life from the trespasser, or if the trespass was unaccompanied by any attack on or danger to the person of the slayer." The law upon this subject is also given in 1 Wharton's Criminal Law and Procedure, Homicide, § 223, pp. 492, 495:

"Except to the extent that one may kill to prevent the commission of a felony by force or surprise, or to apprehend a felon, or in defense of one's habitation or place of business, there is no right, apart from statute, to kill in defense of property. While an owner may lawfully use reasonable force to protect his property, if he kills in order to protect it, he is guilty of felonious homicide.

\* \* \* \* \* \*

"While a man may use as much force as is necessary in the defense of his property, it is generally held that in the absence of the use of force on the part of the intruder, he is not justified in the use of such force as to inflict great bodily harm or to endanger life." (Ibid. p. 495)

This subject is further elaborated in the author's treatment of assault, battery and mayhem in 1 Wharton's Criminal Law and Procedure, § 354, p. 708:

"A person may use as much force as is reasonably necessary in the defense of his property. It is generally held that in the absence of the use of force on the part of the intruder, the owner is not justified in inflicting great bodily harm or endangering life.

"The preservation of human life and limb from grievous harm is of more importance to society than the protection of property. Hence, when a person uses more force in the protection of his property than the circumstances of the attack thereon warrant, he is chargeable criminally for the assault and battery."

The rule is also stated in 1 Warren on Homicide, § 141, p. 614, in the author's treatment of the subject of assault with intent to kill:

"One in possession of land may resist an entry thereon. But an assault with intent to kill can not be justified on the ground of its necessity in defense of property, unless there is a statute making it justifiable. Therefore it is no defense to a prosecution for assault with intent to murder that the one assaulted was a trespasser on the grounds of defendant."

■ The defendant does not claim that he was being robbed, nor that Mike Westfield was threatening or attempting to assault or inflict upon him any bodily harm, nor that he acted in his own necessary self defense. Clearly, the jury rejected the defendant's contention that Mike Westfield and those with him were stealing and carrying off his property. However, even if they were doing so, the defendant acted unlawfully and became criminally liable when he deliberately shot Mike Westfield with a shotgun as he entered his vehicle and again after he was seated inside. And when the defendant did so, under the facts and circumstances shown in this record, there can be no doubt that he thereby intended to kill the boy then and there.

■■ All Assignments of Error are overruled. The judgment of the trial court is here modified by vacating that portion thereof which erroneously rendered the defendant infamous. T.C.A. § 40-2712. As thus modified, the judgment of the trial court is affirmed.

GALBREATH, J., did not participate in this case.