JOHN ALLEN SANDERS, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—467 S.W.2d 821.

March 9, 1971.

Certiorari Denied by Supreme Court May 3, 1971.

G. Edward Draper, Hugh W. Stanton, Sr., Gary London Pagels, Memphis, for plaintiff in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, for defendant in error.

O'BRIEN, J.  This cause is before this Court on appeal from a jury conviction and sentence in the Criminal Court of Shelby County, Tennessee. John Allen Sanders, the plaintiff in error, was convicted of assault and battery on a female under the age of twelve years with intent to carnally know her, and was sentenced to fifty years in the State Penitentiary. Motion for a new trial was overruled and appeal granted. A sixty day extension of time

was allowed within which to perfect the appeal. The Bill of Exceptions was not timely filed.

Under the provisions of TCA Sec. 27-111, as amended by Chapter 475 of the Public Acts of 1970, this Court directed the filing of the Bill of Exceptions. The cause is now properly before this Court.

Defendant, John Allen Sanders, was found to be indigent by the trial court and the public defender, in the person of G. Edward Draper, Esq., was appointed as counsel. Subsequent to his trial and conviction, the defendant was represented by private counsel in the course of effecting his appeal. The Bill of Exceptions was approved by G. Edward Draper as attorney for the defendant. Retained counsel filed a Brief and Assignments of Error in this Court on October 5th, 1970. A very comprehensive Brief and Assignments of Error was filed on June 9th 1970, by Hugh Stanton, Sr., public defender for Shelby County, as attorney for the appellant.

Briefs filed by retained counsel and the Public Defender, and all Assignments of Error will be considered in order that a complete review may be made.

The pertinent facts disclosed from the record indicates that on December 30th, 1967, Lorrie Jean Betts, the prosecutrix, was eleven years old and apparently had been a deaf mute from birth. On December 30th, 1967, two Memphis Police Officers, Patrolman Cantrell and Simpson, on routine patrol, at approximately 8:00 o'clock P.M., discovered a yellow and white 1959 Ford station wagon parked beyond a barricade on Old Millington Road near its intersection with Overton Crossing Road.

Old Millington Road was not in public use at that point and the area was generally used for a dumping ground by local residents. Upon investigation to determine whether the car was parked or abandoned, they found the vehicle to be occupied by the defendant, and Lorrie Jean Betts.

The testimony of Lorrie Jean Betts was adduced utilizing the services of an instructor in deaf education classes in the Memphis City School System who served as interpreter. The child gave a detailed account of the events which transpired and her testimony is summarized.

On December 30th, 1967, the date on which the alleged events occurred, she was eleven years of age. She made an in court identification of the defendant as the individual who inveigled, or forced her into an automobile in the street in front of her home where she had been left in the charge of an older sister while her mother was at her place of employment, some two and a half blocks distant. After following a circuitous route, during the course of which her hands were tied behind her for a time in a painful manner, they stopped in the isolated area where they were subsequently discovered by the police officers. Defendant told her he intended to have sexual intercourse with her, explored her private parts with his hands, and touched the upper areas of her body with his mouth after pulling up her shirt or blouse. At various times he threatened her with a knife, struck, shook and pushed her. She kicked him, stomped his foot, and pushed him away when he endeavored to put his body against her. She further identified defendant as a friend of former neighbors.

The sister of the prosecutrix identified defendant as a friend of neighbors and testified he had previously, on at least two occasions, asked if the child could go home with him. That after Lorrie returned home on the night in question, she had handprints or red marks on her shoulders, her hands, wrist and face.

The testimony of the two arresting officers was similar to the effect that they initiated their investigation because of the location and the circumstances under which they observed the vehicle of defendant parked. As they approached the vehicle, it was apparent that a struggle was taking place between its occupants. They identified defendant and the prosecutrix as the vehicle's occupants and when Patrolman Simpson opened the right hand door of the vehicle the child jumped into his arms and the defendant was directed to step out. The child was trembling and in a highly agitated and emotional state. The child made various gestures, pointing to her lower extremities, pulling her arms and kicking. There were bruises on her arm, and she made the gesture, indicated by the interpreter to mean sexual intercourse, and then pointed at the defendant.

Lt. C. Y. McDaniel, a Memphis police officer, testified that in conjunction with Lt. Davis, he interviewed the defendant on the morning of December 31st, 1967, at which time a standard form, referred to as a rights card, was read to the defendant. This card contained the following verbiage.

''You have the right to remain silent, anything you say can be used against you in a Court of law. You

have the right to have a lawyer, either of your own choice or Court appointed, if you cannot afford one, and to talk to your lawyer before answering any questions, and to have him with you during questioning if you wish.''

Defendant was asked if he understood the card, and replied in the affirmative, further stating that he would answer questions. He did answer questions freely and voluntarily, without the use of force. Utilizing a paper writing made at the time of the interrogation to refresh his recollection, Lt. McDaniel further testified that defendant stated he knew the little Betts girl. That she was walking down the sidewalk when he picked her up and gave her a ride. That he was going over to his sister's house. That he had given her rides on four or five other occasions. That he went to a liquor store on Chelsea Avenue and bought a bottle of wine. That he denied doing any of the things to the little girl, of which he was accused. That the only time he touched the child was to attract her attention to tell her that the car motor had quit running.

It may be noted that medical examination indicated the child was virginal, but there was evidence to indicate that her vaginal area was tender and swollen.

The defendant declined to take the witness stand after informing the Court that he fully understood the Court's inquiry and explanation of the required procedure in that regard.

The Assignments of Error relied on in the Brief submitted by the public defender will be first considered.

Assignment of Error No. 1:

(a) "There is no evidence to sustain the verdict of the jury.

(b) The verdict of the jury is contrary both to the law and the evidence.

(c) The evidence in the case did not sustain a verdict of assault and battery with intent to carnally know female under twelve. The only possible thing that the evidence could have supported was assault and battery with intent to fondle, and the defendant respectfully hinges upon the Court that this is what the defendant should have been convicted of in the verdict."

▮▮▮▮ We have carefully reviewed the entire record. The jury was amply justified in accrediting the testimony which it heard, and returning the verdict which it did upon that evidence. The rule, so frequently stated, being that the jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflict in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. This Court may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The

verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Brown v. State, Tenn.Cr.App., 441 S.W.2d 485, and cited cases.

■ We find both the indictment and the verdict of the jury to be legally correct. There is some evidence in the record tending to establish an alibi by placing the defendant elsewhere at the approximate hour he allegedly picked up the child. The defendant, himself, declined to testify and the only contradiction in the record is in a statement made by him to the police officers, the admission of which he contends was error by a later assignment. While the medical proof indicates that the child had not been involved in sexual intercourse, we are satisfied that the evidence establishes the intent within the purview of the verdict, and in accordance with the rule and the law, set forth heretofore (see *Brown,* supra). The assignment is overruled.

■ Assignment of Error No. 2:

"The defendant was acquitted of the crime of kidnapping by the jury but was convicted of assault and battery on a female under twelve with intent to carnally know her. This constitutes an inconsistent verdict."

No authority has been cited for this contention and we know of no requirement that jury verdicts be consistent within themselves or other verdicts. Further, we find no inconsistency in the verdicts under the facts of the case, or the law as charged by the Court.

"Where several indictments are tried together, a separate verdict ordinarily must be rendered on each, and if the issues are different on each indictment, a verdict of guilty on one and not guilty on another are not inconsistent." 23A C.J.S. Criminal Law sec. 1404, p. 1095.

The only requirement being that the jury should distinguish between the indictments in their verdict.

"When several indictments are tried together, the jury should discriminate by numbers on the docket in their verdicts, and the Court should see that it is done." Fontaine v. State, 65 Tenn. 514.

In this case, after considering the evidence, the jury could have found the defendant guilty of either of the offenses charged on either one of the indictments, and could have, as they did, acquit him on the other. Assignment of Error No. 2 must be overruled.

■ Assignment of Error No. 3:

"The Court erred in refusing to allow the defendant to allow into evidence the doctor's testimony regarding the fact that in the opinion of the doctor this man needed psychiatric treatment."

This assignment apparently goes to refusal of the trial court to allow into evidence certain testimony from the deposition of Dr. Richard Farmer, which was taken during a recess in the trial on the last day of the proceedings. In view of the history of this case in reference to the mental status of defendant, we are of the opinion that if

there was error in the Court's action it was harmless. The admission of this physician's testimony in reference to his opinion regarding future treatment of the defendant might well have been an invasion of the province of the jury in determination of defendant's mental state at the date of the commission of the act for which he was charged, and during the course of his trial. The record is replete with documentation of the defendant's mental condition.

The doctor stated that his examination of the patient had been earlier in the month. While apparently of the opinion that defendant would benefit from in-patient psychiatric help, mainly because of his depression, the doctor also testified he had the benefit of the electro-encephalogram studies and social history; that he was familiar with the meaning of the McNaughton Rule as a rule used in legal procedures, and in his opinion the defendant was sane within the meaning of the rule. This Court has recently held in Smith v. State, Tenn.Cr.App., 452 S.W.2d 669, that the McNaughton Rule is still the governing criteria for outlining the test for sanity in the State of Tennessee. In view of Dr. Farmer's positive statement this Assignment of Error must be overruled.

■ Assignment of Error No. 4:

"The Court erred in allowing the defendant to go to trial when he had recently been confined up until the date of trial in the mental ward of John Gaston Hospital. There was also some strong evidence that the defendant was insane since he attempted suicide prior to his trial and then attempted suicide again right after

he received the verdict in the case. The defendant also has a long history of mental illness.''

This contention is not sustained by the record. In view of this and for the reasons set forth in this Court's conclusion regarding Assignment of Error No. 3, this assignment also must be overruled.

### ■ Assignment of Error No. 5:

''The defendant further urges upon the Court the proposition that the physical examination of the victim revealed that there was no evidence of trauma to her private parts, and that by her own testimony the defendant did not place his private parts upon her, or attempt to penetrate her. The defendant would show that the Court erred in not charging the jury that assault and battery with intent to carnally know requires that defendant at the bar had attempted to touch the victim with his penis or attempted to penetrate her.''

According to the record, prosecutrix indicated on at least two occasions, once to the police officers and again in Court, by the use of appropriate sign language, that the defendant had stated his intention to have sexual intercourse with her.

There is much other evidence in the record which has been accredited by the jury. We find the charge to the jury given by the Court to be correct and complete. Assignment of Error No. 5 must be overruled.

### ■ Assignment of Error No. 6:

"Defendant would show that he, through his counsel, gave the Court a charge which quoted from Strader v. State, and which stated as follows:

'In order to convict of the offense of assault and battery with intent to carnally know a female under the age of twelve years, you must be convinced beyond a reasonable doubt that the defendant either tried to penetrate the child or touched her with his penis.'

Defendant avers that the Court's failure to charge the above contributed to the defendants conviction and was error."

We cannot agree with the contention of defendant that the special instruction No. 1, which was submitted to the Court was either proper, or comes within the scope of the law in this case. The charge relative to assault and battery with intent was adequately covered by the Court and the Court acted within its discretion in refusing to give the charge as submitted by the defendant. Assignment of Error No. 6 is overruled.

▆▆ Assignment of Error No. 7:

"The defendant avers that the Court erred in admitting into evidence an oral statement taken from the defendant shortly after the incident."

We cannot find in this record that the defendant's constitutional rights have been circumvented. The defendant's right to counsel, or to remain silent, including all adjunctive admonitions in reference to appointment of counsel, if he could not afford one, were fully explained

to defendant after which he made a completely voluntary statement and answered questions. The statement made in the presence of Lt. McDaniels and Lt. Davis was exculpatory rather than inculpatory and we fail to find any error on the part of the trial court in allowing its admission into evidence.

The Assignments of Error submitted by retained counsel do not differ from those submitted by the Public Defender, and the reasoning expressed in this opinion is conclusory as to them. We find nothing in this record to sustain any of the Assignments of Error made by the defendant and the judgment of the trial court is affirmed.

Mitchell and Russell, JJ., concur.