IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 2, 2008 Session

## RONALD DONNELL MOORE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-18192    Carolyn Wade Blackett, Judge**

**No. W2008-00034-CCA-R3-PC  - Filed May 20, 2009**

The petitioner, Ronald Donnell Moore, appeals the judgment of the Shelby County Criminal Court denying post-conviction relief. In 1994, the petitioner was convicted of first degree murder and sentenced to life imprisonment. In seeking post-conviction relief on appeal, the petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel. Specifically, the petitioner asserts that his counsel was ineffective: (1) in failing to seek proper jury instruction on the burden of proof; (2) in failing to request jury instruction on the lesser-included offenses of first degree murder, in particular, the offenses of reckless homicide and criminally negligent homicide; and (3) in failing to object to the presence of a mannequin in the courtroom. After review, the judgment of the court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Marty B. McAffee and Vicki M. Carriker, Memphis, Tennessee, for the appellant, Ronald Donnell Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson and Thomas Henderson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND

This case represents a long procedural history. The petitioner was convicted of first degree murder and sentenced to life imprisonment. This court affirmed the conviction on direct appeal. *State v. Ronald D. Moore*, No. 02C01-9412-CR-00296, 1995 WL 555076 (Tenn. Crim. App., at Jackson, Sept. 20, 1995), *perm. app. denied* (Tenn. Mar. 4, 1996). The facts of the case, as established on direct appeal, are as follows:

The [petitioner] does not deny that on March 10, 1992, he shot the victim, Daniel Miller, in the back outside of Cox's Grocery Store. The state called Johnnie Miller, the mother of the victim, to the stand, who testified that on the evening that her son was killed the [petitioner] came to her home looking for her son. She stated that the [petitioner] insisted that the victim had stolen a gun from him earlier in the day, and that if he did not return it to the [petitioner], the [petitioner] would kill Daniel Miller.

Kimberly Dobey, the sister of the victim, also testified that on the evening prior to the murder, the [petitioner] and two others showed up at the home which she shared with her mother and two brothers brandishing weapons and threatening to kill the victim if he did not return the [petitioner's] property to him that evening.

Dr. Jerry Francisco, medical examiner for Shelby County, testified that the [victim] was shot in the back to the left of his spine, and that the bullet penetrated his lung, and that the [victim] died from complications resulting from the gunshot wound approximately ten days after the [petitioner] shot the victim.

Morris Cox, the owner of the grocery store where the shooting occurred, testified that although he did not see the shooting, he was there the evening of the shooting and heard one gunshot. He testified that the victim was attempting to come into the grocery store when he was shot in the back. The shot to the victim's back caused the victim to fall halfway inside the grocery store and halfway out.

The brother of the victim, Bernard Miller, testified that he was at home with his mother and his sister when the [petitioner] and two others came to his home brandishing weapons and threatening to kill the victim if he did not return the [petitioner's] property that evening.

The jury heard from Keith Mosby, a close friend of the victim, who was at the scene of the shooting. Mr. Mosby testified that he saw the victim arguing with someone, and that he saw the [petitioner] turn around, grab the doorknob of the grocery store, and then Mr. Mosby testified that he heard one gunshot.

James Albert Jones testified that he saw the [petitioner] hit the victim in the face with the gun, which the [petitioner] later admitted to during the [petitioner's] direct testimony. Finally, the state called Ricky Davison to the stand. Mr. Davison was an officer on patrol on the evening of the shooting. He testified that he responded to a call from the victim's sister in which she complained that the [petitioner] and two others had shown up brandishing weapons.

The [petitioner] called two witnesses and testified himself as to the events of the evening of the shooting. The jury first heard from Johnny Elzey, a friend of the [petitioner], who testified that he was at the scene of the shooting and witnessed the argument between the victim and the [petitioner], and that he heard two distinct

gunshots.  Mr. Elzey also testified that after the [petitioner] shot the victim, the [petitioner] got back into Mr. Elzey's car, and the two of them drove away.

The next witness to testify on behalf of the defense was Terrance Flemmons, who subsequently revealed his true name as Willie Cooper.  This witness testified that he was near the scene of the shooting when it occurred, and that he heard two gunshots as well.  Further, he testified that he actually saw the [petitioner] shoot the victim.  He testified that he did not know the [petitioner] prior to being jailed in the same area of the Memphis County Jail in February of 1994.

Finally, the jury heard from the [petitioner].  The [petitioner] testified that earlier in the day the victim had been in a home where he frequented, and that he believed that the victim had stolen a gun from his home.  The [petitioner] admitted that he did go to the home of the victim earlier in the day, but testified that he was not threatening and did not display a weapon.  The [petitioner] testified that he and Mr. Elzey were driving past Cox's Grocery Store when he saw the victim and asked Mr. Elzey to stop the car.  Whereupon, he proceeded to engage in an argument with the victim over the missing gun.  He admitted that he hit the victim in the face with the weapon, but that shortly after that both he and the victim decided to walk away from the argument.  The [petitioner] testified that as he turned his back on the victim and began to walk away he heard a gunshot and "instinctively turned and shot."

The state called one rebuttal witness.  Michael Bynum testified that his nickname was "Hardface," and he denied being at the shooting.  This was important because the [petitioner's] earlier witness, Terrance Flemmons, had testified that he had been standing on the street with several other men, including one with the nickname "Hardface."

*Id.* at *1-3.

The petitioner timely filed a pro se petition for post-conviction relief.  Following two appointments of counsel, minor amendments to the petitioner's petition, and two evidentiary hearings, the post-conviction court denied relief.  This court summarized the proof presented as follows:

Prior to the start of the proof, petitioner's post-conviction counsel informed the court that the petitioner told him that morning of the existence of two witnesses that the petitioner required for his hearing.  Counsel further explained that until the morning of the hearing, he was unaware of their existence and unsure that he would represent the petitioner because the petitioner had intended to employ private counsel. The petitioner stated to the trial court that he could not understand why post-conviction counsel did not know of these two witnesses since they were mentioned by name in the amended petition filed by counsel.  The trial court then advised it would proceed to hear the testimony of the petitioner and his two former

-3-

trial counsel and continue the hearing to allow petitioner to present his other witnesses.

The petitioner also acknowledged that he intended to procure private counsel. The petitioner testified that his ineffective assistance of counsel claim was based primarily upon trial counsel's failure to investigate the injury to the victim that occurred in the Intensive Care Unit (ICU) of the hospital. The petitioner claimed that the injury occurred when Cheryl Johnson and Lisa Watkins fought with each other in the ICU. He contended this incident led to complications which ultimately caused the victim's death.

The petitioner's first trial counsel with the Shelby County Public Defender's Office testified that the petitioner informed her of the hospital incident, but she felt that the intervening cause defense had little chance of success and that petitioner's best trial strategy was voluntary manslaughter or self-defense. She did not recall having made any effort to interview the two women. She testified that at first petitioner seemed "okay" with this decision, but later "persisted on with the intervening cause. And we disagreed." The trial court subsequently granted her request for withdrawal when she, near or on the day set for trial, learned that the petitioner had filed a complaint against her with the Board of Professional Responsibility.

The petitioner's next appointed counsel . . . conceded that the petitioner informed him of the hospital incident and requested that his defense be that the victim died as a result of the hospital incident. Counsel did not interview the two women allegedly involved in the altercation. Counsel stated that he discussed this with the medical examiner, who insisted that the gunshot wound caused the death. Counsel then discussed his disagreement with the petitioner regarding petitioner's proffered strategy. Counsel stated that after he explained his views against offering such a defense, he could not say whether the petitioner agreed or disagreed. Nevertheless, [Counsel] stated it was understood the two women would not testify.

*Ronald Donnell Moore v. State*, No. W1999-02125-CCA-R3-PC, 2001 WL 792612, *1-2 (Tenn. Crim. App., at Jackson, July 13, 2001) (footnotes omitted). The post-conviction court scheduled a hearing to permit the petitioner to bring in the two witnesses and for final arguments of counsel. However, no further proof was presented at the scheduled hearing. *Id*. at *3-4. On appeal, this court found certain procedural deficiencies and remanded the case for appointment of different counsel to investigate the petitioner's claim regarding the intervening-cause defense and to file an amended petition alleging any other grounds for relief deemed appropriate, and for new evidentiary hearing. *Id*. at *5. Upon remand, new counsel was appointed, the petition was amended, and two evidentiary hearings were held on June 7, 2007, and September 14, 2007.

The following pertinent evidence was presented at the 2007 hearings. The petitioner complained that his first appointed counsel did not make an effort to include lesser-included offenses in the jury instruction, instead, counsel wanted to pursue theories of self-defense or heat of passion.

-4-

The petitioner further asserted that his second appointed counsel, who ultimately represented him at trial and on direct appeal, did not request lesser-included offenses because the defense strategy was "all or nothing." The petitioner recalled that he was initially in agreement with the "all or nothing" defense strategy. However, the state requested that the jury be instructed on lesser-included offenses, and the petitioner agreed to the additional instructions. As a result, the jury received instructions on second degree murder and voluntary manslaughter. The petitioner stated that there was no discussion on instructing the jury on the offenses of reckless homicide or criminally negligent homicide, and he did not ask for instructions on offenses beyond voluntary manslaughter because he was not well-versed in the law at the time of his trial.

The petitioner testified that he initially agreed on pursuing a theory of self-defense but changed his mind when he learned that an incident at the hospital may have been the intervening cause of the victim's death. The petitioner claimed that he heard from the victim's sister that "the Med killed [her] brother." The victim's sister told him that the hospital initially informed the family that the victim was going to pull through only to call a few days later to inform them that the victim was going to die. Afterwards, people were saying that the petitioner should not be charged with first degree murder because the victim did not die as a result of the gunshot wound inflicted by the petitioner.

The petitioner claimed that his trial counsel failed to hire an investigator and failed to locate two witnesses, Steve Moore, Jr., and Kimberley Dobey, who told the petitioner that two women got into a fight standing over the victim at the hospital. The petitioner thought this information supported an intervening cause theory and wanted to pursue the theory. However, trial counsel rejected the petitioner's suggestion and pushed for a theory of self-defense. The petitioner asserted that he did not want to argue self-defense and wanted to argue voluntary manslaughter. The petitioner acknowledged that his testimony at trial indicated that he had his back toward the victim who did not have gun. The petitioner heard a shot and, in response, shot back. The petitioner conceded that given his trial testimony a theory of self-defense made sense.

The petitioner testified that although the state discussed its burden of proof during *voir dire*, he did not recall whether or not the trial court instructed the jury as to the burden of proof. The petitioner stated that he reviewed the jury instructions in his case and did not see instructions on the burden of proof. The petitioner stated that he could not recall whether or not trial counsel objected to the court's failure to instruct the jury on the burden of proof. He further stated that he did not recall trial counsel raising the issue in the motion for new trial or on direct appeal. The petitioner acknowledged that trial counsel discussed the burden of proof in his opening statements to the jury.

The petitioner asserted that prior to and during opening statements, the state engaged in prosecutorial misconduct by having an "upper body torso of a mannequin with a hole in his back pointed toward the jury. They never introduced this as an exhibit, yet it was there." The petitioner recalled that the mannequin was not utilized by state witnesses, nevertheless, its presence inflamed the jury because it was not removed from the courtroom. The petitioner said he could not remember if the mannequin was present in the courtroom after opening statements of the first day of his trial. The petitioner acknowledged that his trial lasted three days.

Regarding his intervening cause theory, the petitioner acknowledged that his post-conviction counsel obtained the victim's medical records, subpoenaed any incident report regarding an altercation at the hospital where the victim was being treated, and attempted to locate the witnesses to the alleged altercation at the hospital. The petitioner confirmed that there was no incident report regarding a fight occurring near the victim at the hospital, and that the alleged witnesses could not be located. The petitioner also admitted that the medical examiner testified at trial that the victim died of a gunshot wound.

The petitioner's trial counsel testified that he had practiced law for 33 years. He recalled that he had difficulty speaking to witnesses so he hired an investigator to assist him with the investigation of the petitioner's case. Counsel further recalled that the petitioner told him that two women got into a fight on opposite sides of the victim's bed at the hospital. The petitioner believed that the victim had died of "pneumonia by fighting" rather than by the gunshot wound. The petitioner wanted counsel to be aware of the fight in order to use the information to cross-examine the medical examiner and get him to admit that the fight occurred and may have caused the victim's death. Counsel recounted:

> I asked [the petitioner] who the women were and he didn't actually give me names but he said he didn't want them to testify anyway or that they were not going to testify anyway. He simply wanted me to be aware of [the information] and to see if I could get the medical examiner to agree . . . .

Counsel explained, however, that there was no good faith basis to question the medical examiner about this as there was no proof to verify the hospital fight story. Counsel stated that the best defense strategy in the petitioner's case was self-defense. Counsel noted that at the time of trial the petitioner was adamant that he shot the victim in self-defense. Counsel further noted that a defense witness testified that he heard two shots fired.

Counsel testified that he discussed lesser-included offenses with the petitioner. Counsel said that the defense believed at the time of trial that the proof did not support a conviction for first degree murder; and therefore, the strategy was to go for an "all or nothing" verdict. However, the state objected and the trial court added instructions on second degree murder and voluntary manslaughter. Counsel noted that the case of *State v. Burns* had not been decided at the time of the petitioner's trial. Counsel testified that he did not notice any omission of burden of proof language in the jury instruction given at the petitioner's trial. Counsel also noted that he did not recall seeing a mannequin in the courtroom.

The post-conviction court denied the petition for post-conviction relief by written order entered November 30, 2007. The petitioner filed a timely notice of appeal.

**STANDARD OF REVIEW**

On appeal, this court is bound to the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings

are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Id.*

## ANALYSIS

In the instant appeal, the petitioner has raised the single issue of ineffective assistance of counsel. The petitioner claims that trial counsel's representation was deficient because: (1) he did not request a jury instruction regarding the state's burden of proof, object to the court's failure to instruct on burden of proof, and did not raise the issue on appeal; (2) he failed to request jury instructions on the lesser-included offenses of reckless homicide and criminally negligent homicide and did not raise the issue on appeal; (3) he failed to object to the presence of a mannequin in the courtroom.

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id.* at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.*

## I.

As noted, the petitioner complains that his trial counsel did not object to the court's failure to instruct the jury on the burden of proof and did not raise the issue on direct appeal. Specifically, the petitioner submits that no jury instruction was proffered making clear that the state had the burden of proving his guilt beyond a reasonable doubt. In denying relief, the post conviction court found the following:

> Petitioner asserts that counsel was ineffective for failing to request jury instructions
> on burden of proof, however, the trial court explained burden of proof to the jury in
> both its written and oral instructions to the jury. Petitioner failed to overcome the

presumption that trial counsel's actions were within the wide range of reasonable professional assistance.

Petitioner avers that counsel failed to properly raise objections. . . . It is . . . a general rule that in evaluating claims of error as to jury instruction, the instruction must be reviewed in its entirety and read as a whole. Petitioner's argument focuses solely on the jury instructions read to the jury by the trial judge on May 2 and 3, 1994, however, in the trial judge's May 5, 1994 charge of law, the judge instructed the jury several times that the State had the burden of proving beyond a reasonable doubt the elements of the offenses for which the Petitioner was charged. In Petitioner's trial, the jury was properly instructed of the State's burden of proof, therefore, Petitioner did not show that counsel's actions fell below an objective standard of reasonableness. (Internal footnotes and citations omitted).

Our review of the record supports the post-conviction court's findings. The jury instructions included in the record reflect that the trial court referred to the state's burden of proof when discussing: the elements of the offenses, the identity of the petitioner as the perpetrator of the charged offenses, the state's burden in showing that the petitioner did not act in self-defense. In addition, the trial court instructed the jury on the presumption of innocence and reasonable doubt as follows:

You enter upon this investigation with the presumption that the defendant is not guilty of any crime and this presumption stands as a witness for him until it is rebutted and overturned by competent and credibly proof. It is, therefore, incumbent upon the state, before they can - - before you can convict the defendant to establish to your satisfaction beyond a reasonable doubt that the crime charged in the indictment has been committed, and that the same was committed within the County of Shelby and the State of Tennessee before the finding of this indictment, and that the defendant at the bar committed t[h]e crime in such manner that would make him guilty under the law heretofore defined and explained to you.

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation, to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

The trial court's instruction was a correct statement of law regarding the presumption of innocence and reasonable doubt. *See, e.g., State v. Hall*, 976 S.W.2d 121, 159 (Tenn. 1998); *State v. Bush*, 942 S.W.2d 489, 521 (Tenn. 1997); *Arterburn v. State*, 391 S.W.2d 648, 656 (Tenn. 1965). It is clear from the record that the jury instruction read in its entirety did not mislead the jury as to the state's burden of proving the petitioner's guilt beyond a reasonable doubt. *See State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005). As such, the petitioner has neither proven that counsel was deficient

in failing to request additional particularized instruction on the state's burden of proof nor demonstrated that the outcome of the trial would have been different had additional instruction been given.

Likewise, the petitioner has not proven that counsel was ineffective in failing to raise the issue on appeal. Counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). If an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and the petitioner will have suffered no prejudice. *Id.* As set forth, the petitioner did not prove counsel was ineffective in raising this issue at trial; therefore, it follows that counsel was not ineffective in failing to raise the issue on appeal. The petitioner is not entitled to relief.

## II.

The petitioner next asserts that counsel was ineffective for failing to request a proper jury instruction for the offenses of reckless homicide and criminally negligent homicide or to allege this error in the motion for new trial, or pursue the issue on appeal. The petitioner concedes that the law as set forth in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999) does not apply to his trial and direct appeal.

Addressing the petitioner's complaint, the post-conviction court made the following findings:

At the hearing for the Petition for Post-Conviction Relief, Counsel testified that a jury instruction regarding the lesser included offenses of reckless or negligent homicide would not support [the petitioner's] self-defense argument. Petitioner has not established that Counsel's failure to request jury instruction on the lesser included offenses was not sound trial strategy within the wide range of reasonable professional assistance.

Upon review, we initially note that the issue of lesser-included offenses is controlled by the prevailing law at the time of trial. *Wiley v. State*, 183 S.W.3d 317, 328 (Tenn. 2006). At the time of the petitioner's trial, it was the "the duty of all judges . . . to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a)(1979). In *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006), our supreme court observed that:

Under this prior version of section 40-18-110, a defendant was not required to request a lesser-included instruction to assign as error the trial court's failure to give such instruction. Therefore, all a defendant need do to assign error to a trial court's failure to instruct on a lesser-included offense was to raise that issue on appeal.

Because the trial court had a mandatory duty to instruct the jury regardless of a request to do so, this court has consistently held that trial counsel was not ineffective for failing to request an instruction on a particular lesser included offense. *See, e.g., Larry Johnson v. State*, No. W2006-00345-CCA-R3-PC, 2007 WL 2120184 (Tenn. Crim. App. July 24, 2007), *perm. app. denied* (Tenn. Dec. 26, 2007); *Jerome Sawyer v. State*, No. W2005-01813-CCA-R3-PC, 2007 WL

778828 (Tenn. Crim. App., at Jackson, Mar. 15, 2007); *Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC, 2006 WL 1381511 (Tenn. Crim. App., at Knoxville, May, 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006); *Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), *perm. app. denied* (Tenn. Oct. 17, 2005).

Also, as found by the post-conviction court, the petitioner's trial counsel testified that lesser-included instructions were not requested by the defense for tactical reasons. Counsel explained that the petitioner was adamant that he shot the victim in self-defense. Therefore, the strategy was to argue self-defense and go for an "all or nothing" verdict. The petitioner's case was tried and appealed prior to the issuance of the *Burns* decision. It is not sound policy for this court to second-guess counsel through the distortions of hindsight. "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Accordingly, we conclude that the petitioner failed to demonstrate deficient performance of counsel as announced in *Strickland*.

Likewise, the petitioner has not demonstrated deficiency regarding counsel's failure to raise as error on appeal the lack of jury instruction on reckless homicide and criminally negligent homicide. Again, counsel is not required to raise "every conceivable issue" on appeal and is afforded "considerable deference" in determining appellate strategy. *Carpenter*, 126 S.W.3d at 887. The petitioner's direct appeal reflects that counsel's primary challenge was to the sufficiency of the convicting evidence. Undoubtably, this issue was raised in light of trial strategy and the petitioner's testimony regarding self-defense. Moreover, to obtain relief on the basis of ineffective assistance of counsel, the petitioner must also demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The evidence at trial clearly reflects that the petitioner sought out the victim and threatened repeatedly to kill the victim while brandishing a gun. Thereafter, the petitioner confronted the victim and intentionally shot him in the back at point blank range. Based on this evidence, the jury found the petitioner guilty of first degree murder despite being instructed on second degree murder and voluntary manslaughter. Consequently, the petitioner has not proven that (1) counsel's conduct fell outside the wide range of reasonable professional conduct for attorneys at the time of appeal; or (2) a reasonable probability that the outcome of the proceedings would have been different had the jury been instructed on reckless homicide and criminally negligent homicide. The petitioner is not entitled to relief.

### III.

The petitioner next alleges that trial counsel failed to provide effective assistance of counsel by not objecting to the presence of a mannequin in the courtroom. The petitioner claims that the mannequin had a hole in its back and its presence prejudiced his trial.

Upon review, we conclude that the petitioner has failed to prove his allegation of fact by clear and convincing evidence. The petitioner alleged that he observed a mannequin in the courtroom during opening statements of his trial. However, contrary to the petitioner's allegation, counsel stated that he did not recall seeing a mannequin in the courtroom. Also, the petitioner has failed to include the transcript of the trial in the appellate record, and there is nothing in the available record

-10-

indicating that a mannequin was present in the courtroom. Additionally, the petitioner does not provide any evidence that the jury saw the mannequin or that it inflamed the jury so as to prejudice his trial. Accordingly, the petitioner has failed to establish his claim in this regard. The issue is without merit

## CONCLUSION

Based on the aforementioned reasoning and authorities, we conclude that the petitioner failed to prove that he received the ineffective assistance of counsel. Therefore, we affirm the denial of post-conviction relief.

_____
J.C. McLIN, JUDGE