IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

# THE SHELBY INSURANCE COMPANY and THE ANTHEM CASUALTY INSURANCE GROUP, v. HENRY MATHES, JOANN MATHES and JERRY STEWART

**Direct Appeal from the Chancery Court for Washington County**
**No. 32350     Hon. Jean A. Stanley, Judge**

**FILED JULY 27, 2000**

**No. E2000-00186-COA-R3-CV**

In this declaratory judgment action the insurance company sought a declaration that an incident giving rise to a suit by Stewart against the insurance company's insured Mathes, was not covered due to an exclusion in the policy. The Trial Judge ruled the exclusion did not apply, and the insurance company appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Thomas C. McKee, Johnson City, Tennessee, for the appellant, the Shelby Insurance Company.

Jerry W. Laughlin, Greeneville, Tennessee for the appellees, Henry Mathes and Joann Mathes.

## OPINION

In this declaratory judgment action, the insurance company relied on the following provision in its policy with its insured, Henry Mathes, to exclude coverage on a suit brought by Jerry Stewart against Mathes for injuries sustained in an altercation. The policy provision provides an exclusion for:

> any claim arising out of an intentional act committed by or at your direction.
> This does not apply to bodily injury or personal injury if:
>
> a.      such insured acted with reasonable force and

> b.    such actions were not criminal, malicious or committed in violation of a penal law or ordinance by you or with your prior knowledge or consent.

The genesis of this action is the suit for damages for personal injuries by Stewart over an incident which occurred at a "cabin" which Mathes helped build, along with Stewart's father, and where Mathes and several friends would gather to socialize. By way of background, Stewart's father had worked for Mathes, until Stewart's father developed a terminal illness. Stewart's father then asked Mathes to bring his $10,000.00 life insurance policy from work to the hospital so that he could change the beneficiary from Stewart to his brother and sister. Mathes complied, and Stewart then began making threats toward Mathes.

Mathes was aware of these threats, and knew Stewart had been arrested on occasions for domestic violence against his wife and siblings, and that Stewart often carried a knife in his pocket. Stewart had also cursed Mathes on a previous occasion at the cabin. Mathes was 51 years old at the time and not athletic, and Stewart was approximately 25 or 26 years old and very strong, as he often worked out with weights. From this background, Mathes testified that he was afraid of Stewart and tried to avoid running into him.

On the day of the incident, Mathes was at the cabin with two other individuals, one of whom was Stewart's uncle. Stewart came to the cabin and started to verbally abuse Mathes. Stewart was asked to leave by all three men, which he belligerently refused to do. Stewart then shoved Mathes twice, stuck his hand in his pocket, and threatened to kill him. At that point, Mathes retreated to the other side of the room, picked up an aluminum ball bat, and backed up against the wall. Mathes described Stewart as drunk and violent, but still agile on his feet. Stewart lunged toward Mathes with his hand in his pocket, and Mathes swung the bat toward Stewart's outstretched arm/fist. The bat then glanced off of Stewart's shoulder and struck his head. He again lunged at Mathes and knocked Mathes back against the wall. Mathes swung the bat downward a couple of times he explained to get Stewart "off of" him, and Stewart finally fell to the floor. Mathes did not strike Stewart once he fell, but he did put his foot on him and hold him down until the uncle helped escort Stewart out of the cabin.

Stewart fought with the emergency medical personnel when they arrived, and a police officer put a zip-tie cuff on Stewart, which he broke, and he was then restrained with steel handcuffs. Stewart's blood test at the hospital revealed a blood alcohol level of .292, and a positive result for marijuana. Stewart suffered extensive injuries.

Mathes was charged with aggravated assault, to which he testified he was granted a pretrial diversion with no admission of guilt, maintaining that he had committed no crime.

In ruling in favor of the insured, the Trial Judge said:

The Court cannot say as a matter of law that Mr. Mathes used unreasonable

force or that his actions were malicious or criminal. In exercising hindsight, we often have clearer vision than we have when confronting an emotionally charged incident such as that which took place on September 27, 1997. The Court believes that Mr. Mathes sincerely believed on that date that he was acting in self-defense in the only reasonable way he knew to act at the time. Therefore, Shelby Insurance Company is not relieved of its responsibility to defend Mr. Mathes against the complaint filed against him by Jerry Stewart.

Our review of the factual determinations is *de novo* with a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App. 1992). Questions of law are reviewed *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

The insurance company argues that Mathes acted criminally in dealing with Stewart, because he was charged with aggravated assault and his actions in fact violate Tennessee statutes dealing with assaults, viz., Tenn. Code Ann. §§ 39-13-101 and 102. Mathes was not convicted and did not plead guilty to the charge. Moreover, Mathes' actions do not establish as a matter of law that he was guilty of violating the cited statutes, because the statutes also provide that a defense to the crime is self-defense. *See* Tenn. Code Ann. §39-11-611.

Regarding the issue of self-defense, the Trial Court found that Mathes was acting in self-defense at the time of his altercation with Stewart, a factual determination. *See Arterburn v. State*, 391 S.W.2d 648 (Tenn. 1965). On this issue, the Court must give the Trial Court's finding great weight on appeal, because the Trial Judge observed the witnesses testify and judged their credibility. *Adelsperger v. Adelsperger,* 970 S.W.2d 482 (Tenn. Ct. App. 1997).

Self-defense requires the defendant reasonably believe that the force used is necessary to protect against the force of another and to reasonably belief that there is imminent danger of death or serious bodily injury, and such danger must be real or honestly believed to be real. *See* Tenn. Code Ann. §39-11-611. These are factual determinations. *State v. Renner*, 912 S.W.2d 701 (Tenn. 1995).

A preponderance of the evidence supports the Trial Judge's findings that make it reasonable for Mathes to believe that he was in imminent danger and that he acted with reasonable force to protect himself. Tenn. R. App. P. 13(d).

The insurance company also argues that Mathes continued to use force beyond the point in time that force was necessary, but Mathes testified that he did not hit Stewart or use any further force against him once Stewart stopped attacking him, and the Trial Court obviously believed Mathes' testimony concerning all aspects of the self-defense assertion.

Finally, Shelby argues given all of the circumstances that Mathes did not act with

reasonable force regarding the incident.  The Trial Court expressly stated in its Order that it could not find that unreasonable force was used. Given the evidence, we cannot disagree with the Trial Court's finding on this issue. Accordingly, we affirm the judgment of the Trial Court and remand, with cost of the appeal assessed to Shelby Insurance Company.

_____
HERSCHEL PICKENS FRANKS, J.