# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### APRIL SESSION, 1999

**FILED**

May 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
      Appellee          )
                             )
vs.                          )
                             )
THOMAS BRANDON BOOKER,  )
                             )
      Appellant          )

No. 02C01-9810-CC-00323

HARDIN COUNTY

Hon. C. Creed McGinley, Judge

(Second Degree Murder)

For the Appellant:

**Richard W. DeBerry**
Asst. District Public Defender
117 Forrest Avenue North
Camden, TN 38320

**Guy T. Wilkinson**
District Public Defender

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Patricia C. Kussmann**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**G. Robert Radford**
District Attorney General

**John W. Overton, Jr.**
Asst. District Attorney General
P. O. Box 484
Savannah, TN 38372

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Thomas Brandon Booker, was convicted by a jury in the Hardin County Circuit Court of second degree murder. The trial court imposed a twenty-two year sentence. On appeal, the appellant raises three issues for our review: (1) the sufficiency of the convicting evidence; (2) the "inadequate deliberation" by the jury; and (3) the trial court's failure to apply a mitigating factor.

After review of the record, we affirm the appellant's conviction and sentence.

## BACKGROUND

On the afternoon of December 1, 1997, the appellant; the victim, Donald Davidson; Jeremy Miller; Sam Todd; and Scotty McLain congregated at the Savannah residence of Sandy Haynes, the sister of Jeremy Miller. Davidson arrived at the residence around 4:30 p.m., followed by the appellant's arrival one hour later. That afternoon, the appellant, Davidson, and Jeremy Miller were drinking beer and peppermint schnapps and ingesting whatever prescription drugs they could find in the residence. Miller could not remember if they had used marijuana but acknowledged that "if we had it, yeah we smoked it." By early evening, Davidson had already engaged in two separate fights in which blows were exchanged.

At some point, the appellant gave Davidson money to purchase additional beer at a nearby convenience store. Upon discovering that the store was closed, the appellant asked Davidson to return his money and Davidson refused. Tension arose between the two, however, things eventually died down. Around midnight, Jerry Miller, brother of Jeremy, arrived at the residence and found the home in disarray. Davidson had spilled food on the floor and Jerry asked him and the others

to clean up their mess. As a result, Davidson and Jerry became involved in a "heated argument." The appellant "stepped in and was going to take up for Jerry." Almost immediately, the appellant and Davidson began to exchange blows. Davidson hit the floor and the appellant jumped on top of him. Jeremy and Jerry broke up the fight. For a period of nearly ten minutes "the fight was over." The appellant went into the kitchen and Davidson went into another room to "cool . . . down." Shortly thereafter, the appellant emerged from the kitchen and again had "words" with Davidson saying, "Die, mother f-----, die." The two moved toward each other and the appellant began "swinging." During this encounter, the appellant produced a knife and stabbed Davidson multiple times. As the appellant left the house, he said, "[t]hat will teach you to f--- with me."

Around 1 a.m. on December 2, 1997, Officer Timothy Kelley and Sergeant Tim Cunningham of the Savannah Police Department responded to a 911 call at the Haynes' address. While approaching the residence three to four minutes later, Officer Kelley observed a white male, later identified as the appellant, walking away from the house. Officer Kelley proceeded to the residence and Sergeant Cunningham approached the appellant. Officer Kelley followed Jeremy to where the victim, Donald Davidson, was lying on the kitchen floor with visible stab wounds. The victim had a weak pulse and was barely breathing. Blood was observed throughout the house beginning at the front door continuing through the living room door and into the kitchen. The victim was taken to the hospital where he died shortly thereafter.

After being detained, the appellant stated to Sergeant Cunningham that "he had stabbed a man down there and that we needed to get him some help down at the house." The officer noticed blood on his hands and clothing. After searching the appellant for weapons, the officer placed the appellant in the patrol car. Then, Sergeant Cunningham proceeded to the scene searching outside for the weapon.

3

With the appellant's assistance, Detective Donald Derr recovered the knife from the kitchen sink.

Dr. O'Brian Smith, the medical examiner, testified that the victim exhibited stab wounds to both arms, bruises to the right knuckles and abrasions to the left wrist which were all possibly defensive wounds; however, he died of multiple stab wounds to the chest all delivered contemporaneously. One of the stab wounds penetrated the heart while another penetrated the liver and continued through the diaphragm and heart. Dr. Smith stated that the victim had a blood alcohol level of .18 grams. The victim also had trace amounts of various drugs in his system including Phentermine, Valium, Cogentin, Atrophine, and Reglan. Dr. Smith further testified that the appellant's blood alcohol level was .14 grams. The appellant tested positive for Butalbital in addition to trace amounts of Valium, Phenergan, Dextromethorphan, and Prozac.

In his defense, the appellant testified that he pulled Davidson off Jerry Miller and held him tightly in a "Half-Nelson." When Davidson appeared to calm down, the appellant turned Davidson loose. Davidson then hit the appellant in the mouth and a fight ensued. The appellant ended up on top of Davidson. The appellant further testified that Jerry and Jeremy began kicking Davidson while the appellant was holding Davidson down. The appellant stopped fighting when the fight became three on one. He admitted that he entered the living room with the knife and said, "[h]e's [victim] not going to hit on me anymore." Prior to this incident, the appellant had undergone extensive surgery on his face. He stated that he stabbed the victim because he was frightened and did not want the victim to hit him in the face anymore.

The trial court properly charged the jury on second degree murder and the lesser offense of voluntary manslaughter. Additionally, the court instructed the jury

4

on the defenses of self defense and intoxication. The jury returned a guilty verdict for second degree murder.

## I. SUFFICIENCY OF THE EVIDENCE

First, the appellant contends that the evidence was insufficient to convict him of second degree murder. Specifically, he contends that the evidence establishes that he acted in self-defense. Alternatively, the appellant contends that if this homicide was unjustified, that the evidence at best, supports only a conviction for voluntary manslaughter.

Following a jury conviction, the initial presumption of innocence is removed from the defendant and exchanged for one of guilt, so that on appeal, the defendant has the burden of demonstrating the insufficiency of the evidence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). It is the duty of this court to affirm the conviction unless the evidence adduced at trial was so deficient that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). In State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1990), this court held this rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.

This court does not reweigh or reevaluate the evidence, nor may we replace our inferences for those drawn by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). A jury verdict accredits the testimony of state's witnesses and

5

resolves all conflicts in favor of the state's theory. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

In order to obtain a conviction for second degree murder, the State is required to prove that the appellant caused the knowing killing of another. See Tenn. Code Ann. § 39-13-210(a)(1) (1997). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). "Whether the acts constitute a 'knowing killing' (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995); State v. Estes, 655 S.W.2d 179, 183 (Tenn. Crim. App. 1983). As the trier of fact, the jury determines whether the defendant acted in self defense. Arterburn v. State, 391 S.W.2d 648, 653 (Tenn. 1965); State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Fugate, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988). Within that determination by the jury, they decide whether the defendant's belief in imminent danger was reasonable. State v. Renner, 912 S.W.2d 701, 704 (Tenn. 1995).

The proof at trial established that the appellant stabbed the victim multiple times. His intent was corroborated by retrieving a knife from the kitchen after the initial fight had ended and his own admission that "[h]e's not going to hit me anymore." Moreover, one witness testified that before the stabbing the appellant said, "Die, mother f------, die!" Another witness testified that following the stabbing, the appellant said, "That will teach you to f--- with me." Implicit within the jury's verdict of second degree murder is their rejection of the appellant's contention that he acted in self defense or with adequate provocation. We will not disturb this finding on appeal. Cabbage, 571 S.W.2d at 835. The proof in the record is sufficient for a rational trier of fact to conclude that the appellant was consciously

6

aware of the nature of his conduct and that the conduct was reasonably certain to cause death. Accordingly, we find the evidence more than sufficient to support his conviction for second degree murder. This issue is without merit.

## II. INADEQUATE JURY DELIBERATION

The appellant argues that the jury failed to follow the court's instructions and adequately deliberate and give fair consideration to his case because it returned its verdict in thirteen minutes. The State argues that the majority of the material facts were undisputed and the only determination for the jury was whether the evidence constituted second degree murder or voluntary manslaughter and whether the defenses of intoxication or self-defense factually applied. The record reflects that the jury retired to consider a verdict at 4:15 p.m. and returned with its verdict at 4:28 p.m.

In Anglin v. State, 553 S.W.2d 616, 620-621 (Tenn. Crim. App. 1977) (citations omitted), where the jury deliberated ten minutes, this court held that "[t]he length of time that a jury deliberates has no bearing on the strength or correctness of their conclusions or the validity of their verdict." See also State v. Gray, 960 S.W.2d 598, 605 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1997); State v. Spafadina, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996), perm. to appeal denied, (Tenn. 1997). We find the above statement of law applicable to the case *sub judice*. Accordingly, this issue is without merit.

## III. SENTENCING

The appellant challenges the length of his sentence based upon the trial court's failure to apply a mitigating factor. For a Range I standard offender convicted of second degree murder, the sentencing range is fifteen to twenty-five years. See Tenn. Code Ann. § 39-13-210; Tenn. Code Ann. § 40-35-112(a)(1)

7

(1997).[1] Because the appellant was convicted of a Class A felony, the starting point for sentencing purposes is twenty years, which is the midpoint in the range. Tenn. Code Ann. § 40-35-210. After weighing the enhancing and mitigating factors, the trial court imposed a twenty-two year sentence.

This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Here, the presumption applies.

Upon our *de novo* review, we consider the evidence heard at trial and at sentencing, the presentence report, the argument of counsel, the nature and characteristics of the offense, any mitigating and enhancement factors, the defendant's statements, and the defendant's potential for rehabilitation. Tenn. Code Ann. § 40-35-102, -103(5), -210(b) (1997). The burden is on the appellant to show that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The presentence report reflects that the appellant is twenty-six years old and has a high school education. He has been convicted of numerous misdemeanor offenses including theft of property, driving offenses, and alcohol related offenses. The appellant is unemployed, however, he receives social security disability benefits. He admits to frequent use of alcohol and marijuana. The appellant states that he has been prescribed Valium and Prozac.

---

[1]The trial court sentenced the appellant as a range I standard offender. We note that the court set the appellant's release eligibility date at 100% pursuant to Tenn. Code Ann. § 40-35-501(i)(1) and (2) (1997).

The trial court applied the following enhancement factors in determining the appropriate sentence for the appellant's conviction of second degree murder: "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," see Tenn. Code Ann. § 40-35-114(1) (1997), and "[t]he defendant possessed or employed a . . . deadly weapon during the commission of the offense." See Tenn. Code Ann. § 40-35-114(9). The appellant does not challenge the trial court's application of either enhancement factor. Upon our *de novo* review, we conclude that the trial court properly applied the appropriate enhancement factors.

With regard to mitigating factors, the trial court applied, "[t]he defendant assisted the authorities in locating or recovering any property . . . involved in the crime. See Tenn. Code Ann. § 40-35-113(10) (1997). The trial court properly applied this mitigating factor. The appellant's only challenge to his sentence is that the trial court should have applied Tenn. Code Ann. § 40-35-113 (2), that the appellant acted under strong provocation. The trial court noted,

> [t]he Court does not find that he acted under the strong provocation. I don't think the proof would support that. This arose out of an altercation as the proof would show, but the Court finds it doesn't really consist of what the Court would find as strong provocation.

The proof does not preponderate against this finding. The record establishes that the appellant voluntarily injected himself into the fracas between Davidson and Jerry Miller. After the fight between Davidson and the appellant ceased and a ten minute "cooling-off" period had transpired, it was the appellant who reinitiated contact with the victim after arming himself with a knife. These facts, in addition to the appellant's stated intentions before and after the stabbing, do not support a finding that the appellant acted under strong provocation.

In sum, we conclude that two enhancement factors and one mitigating factor apply. Beginning at the midpoint in the range, the reviewing court is to enhance the sentence based upon the appropriate factors and reduce the sentence within the

range as appropriate under the mitigating factors. <u>See</u> Tenn. Code Ann. § 40-35-210(c) and (e). Accordingly, we find the appellant's sentence of twenty-two years is justified.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
L. T. LAFFERTY, Senior Judge